## Joseph B. Card *v.* The Township of Columbia, Appellant.

*Practice, Supreme Court—Assignments of error—Evidence—Charge of Court.*

Assignments of error to rulings on evidence are not in conformity with the rules of the Supreme Court, and will not be considered, where no summary or part of the evidence objected to is included in them.

It is improper practice to assign as error an excerpt from the charge without including what was said in connection with and qualifying it.

A trial court cannot be convicted of error for commenting upon irrelevant or incompetent evidence, where it does not appear that such evidence was objected or excepted to, or that a motion was made to strike it out.

*Negligence—Township road—Guard rail.*

In an action against a township to recover damages for death of plaintiff's wife, alleged to have been caused by the absence of a guard rail at a dangerous point in the road, evidence is admissible that after the accident the township placed a guard rail at the point in question.

In an action against a township for an accident caused by a wagon going over a dangerous embankment where it appears that the course of the wagon was plainly marked by the pole which had dropped to the ground, opinions of witnesses respecting the course of the wagon are not only inadmissible, but of no account.

In an action against a township to recover damages for death of plaintiff's wife alleged to have been caused by the neglect of the township to erect a guard rail at a dangerous point on a road, where there is evidence that the tugs attached to the whiffletrees of the wagon in which plaintiff's wife was riding became detached; that the horses became frightened, and that the wagon went over the embankment, the absence of guard rails is merely the remote cause of the injury, and it is error for the court to instruct the jury that, notwithstanding this evidence, the plaintiff can recover if the township was negligent in not maintaining a guard rail.

Argued March 15, 1898.    Appeal, No. 336, Jan. T., 1897, by defendant, from judgment of C. P. Bradford Co., Feb. T., 1895, No. 369, on verdict for plaintiff.    Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ.    Reversed.

Trespass to recover damages for the death of plaintiff's wife. Before ARCHBALD, P. J.

The facts appear by the opinion of the Supreme Court, and by the charge of the court below, which was as follows :

The plaintiff's case is briefly this : On the afternoon, or early in the evening of August 17, 1894, Mrs. Fanny R. Card was

riding in the conveyance of Mr. Asa Slingerland down Bailey hill, a public road in Columbia township in this county; the vehicle went over the side of the bank, throwing the occupants out, and Mrs. Card was killed. The plaintiff, her husband, claiming that this was due to the negligence of the township authorities, brings this action to recover damages for the death of his wife. The defendant denies that there was any negligence on its part, and it also contends that the accident was the result of that over which it had no control, and for which it was in no wise responsible.

The first question that presents itself, naturally, is whether the township authorities were negligent. Negligence may be defined to be the want of that care which in any given case the circumstances require. It is the omission or failure to meet or perform some duty. That leads us then to the thought what duty was there in this particular instance which it could be claimed was omitted? This accident happened while the party was riding upon the public highway, by reason, as it is claimed, of defects in the road which rendered it unsafe and dangerous. . . .

Was this road reasonably safe at the point where the accident occurred? There has been a great deal of evidence bearing upon the question of the condition of the road at that time. You, yourselves, by the view which we all took, have seen how it now is. There have been changes made since the accident, but the evidence explains them, and the testimony, by comparison, carries us back to what it was at the time of the accident. A reasonably safe road should be of proper width, it should be free from dangerous obstructions upon its surface, proper regard should be had to make it not too steep, and it should be sufficiently guarded along the edge of places where there is danger that vehicles might get over the side of the road and result in injuries to the occupants unless there was some guard. Did the road at that point meet these requirements? Was it sufficiently wide there? . . . .

Whether this road had any serious obstructions upon it is another question for you. . . . But, aside from all these matters, the main contention on the part of the plaintiff is that the road was not sufficiently guarded at the point of the accident. This seems to be the most important circumstance as to the con-

dition of the road, although the others may have their bearing. At this point, as you yourselves probably noticed, the road veered or bent a little to the left as you came down the hill. According to the testimony, and as we can readily see, before this ditch was dug out from the north side, it must have bent somewhat more, and the angle must have been still more abrupt. On the southerly side, where the wagon went off, there is quite a fall. Some of the witnesses have said that it was not more than two and a half or three feet, and Mr. Webb, the surveyor, said that he measured it, and that it was seven feet off. The road was evidently built on a sidehill, and I believe that is the way it is described, and it is said that this abrupt bank was formed by the dirt being thrown out and the road made out over the side of the hill.

. Below that there is a sharp declivity running down to the foot of the sidehill down into Mr. Ezra Dann's field. The only thing that there was at this point at the time of the accident was a wire fence strung upon posts, these posts being set down at the foot of the first fall off from the side of the road, and beyond that nothing except a comb or ridge of dirt on the side of the road. This has disappeared now by the road being filled up even with where it was. . . . Now, having regard to the construction of the road at that place, its width, the character of the surface and all about it, was this a point of danger that required a guard to protect people from getting over there, and if it did require a guard of some kind, was it sufficiently guarded by the comb of earth and the wire fence which were there? These are questions which you must discuss and determine from all the evidence in the case, whether it was a point of danger, what protection it required and whether that protection was there?

There are some things to be considered in this connection which have been drawn out by the evidence. It is shown that there have been other accidents at that place. Mr. Beardslee went over there a few weeks after the Card accident, and Mr. Jason Murray also went over in the winter of 1892 or the spring of 1893, and Mr. Frank Palmer went over with a load of hay. Those occurrences are to be taken into consideration, because if an accident happens at such a place as that it is some suggestion that it may happen again, and it calls the attention

of the township authorities to that possibility and suggests the need of providing against it. That is the reason that evidence was received here. As we understand it, in each of these cases it is suggested that if there had been a guard there the wagons would not have gone off, although perhaps this is a subject of controversy on the part of the defendant.

[Further than this, not long after the accident the township authorities seem to have recognized that this was a place of danger and that there ought to be a guard there, for we now find a substantial post and plank fence—heavy chestnut posts sunk deep in the ground and heavy plank spiked upon them—extending along where this sidehill breaks off.] [1]

It has been argued by the plaintiff's counsel that the township authorities now recognize this to be a place of danger, or they would not have done what they have. They argue that it is a confession on their part that such a protection ought to be there, and that what was there before was not sufficient. We desire to caution you, however, about carrying this too far. We often have our eyes opened by experience to that we have not seen before, and it would be too bad if a man could not take advantage of that which was brought home to him in such a forcible way as this accident would bring it. And further, persons may be extra cautious. They may carry their precautions beyond that which would be absolutely necessary, and possibly that is the case here. Still, with these cautions, in considering this evidence, I have deemed it proper to have it laid before you, and you will take it for what you consider it to be worth.

There is no question in this case as to notice of the condition of the road to the township authorities, because by the admitted evidence it had been in the condition in which it was for a long time previous. There can be no doubt that the road commissioners knew of its condition. Was it a place which ought to have been guarded, and which if left unguarded was dangerous, and which put travelers who passed there in peril because of the want of guards? If it was a place of danger should there have been a guard there different from what there was? . . . . You must be convinced, in the first place, that the township authorities were negligent and failed to provide that which the law required them to provide, for the reasonable safety of the traveling public, or there can be no recovery. But if they

failed in this duty, if there ought to have been a guard there, and there was not, if in the condition of the road as it stood, it was not reasonably safe, then the first point necessary for the plaintiff to establish has been established. And if you find this point in favor of the plaintiff, that would bring us to the second point in the case.

Not only must there have been negligence on the part of the township authorities, but this negligence must have been the controlling, or as they sometimes say in law, the proximate cause of the accident. There may have been other causes concurring and operating at the same time with the negligence, but the negligence must have been the dominant or predominant or controlling cause of the accident. It must have been that without which the accident would not have occurred. As sometimes expressed it must have been the solely efficient cause of the accident. I would try to translate that by saying that it must have been the real cause of it—that which predominates over every other. Unless it was the cause which predominated over every other and controlled every other there could be no recovery. . . .

If you should find that there was negligence on the part of the defendant in not having a guard of some character at this point sufficient to have prevented the accident, was that the proximate or controlling or predominating cause of the accident? I shall not attempt to get into the evidence, but shall simply present to you the contentions on either side. On the part of the defendant it is claimed, and they have produced evidence to sustain their contention, that the colts driven by Mr. Slingerland were vicious and unbroken, that one of them had only within a short time come out of pasture, that he had manifested vicious habits, and that the tugs or traces were in an unfit and unroadworthy condition, not being properly fastened, and that they frequently came unfastened on that day. They also claim that the harness was otherwise defective, and that the near line on the near horse was tied with strings, which became caught in the hame ring. The defendants allege that three of the tugs came unfastened on that occasion, and in consequence of this the tongue dropped down, that the colts became frightened and kicked and became unmanageable and ran away, starting some distance above the hickory tree, as I understand it, and that the

wagon, after veering from one side of the road to the other, plunged over the roadside. [On the part of the plaintiff it is denied that these animals were vicious; and it is asserted that on the contrary they were well broken and gentle, and it is denied that more than one tug unfastened. It is also contended that the colts did not run until after they had pulled the lines through the hands of Mr. Slingerland, and that just at that point (the point of the accident having been reached at that time), for want of a proper guard there, the wagon plunged over the bank.] [2] . . . .

It is claimed by the defendants that the parties who were present at the accident, immediately afterwards gave a description of it such as the defendants now set up, saying that the tugs came unfastened, that the tongue dropped down, and that the colts kicked and became frightened and ran away. There is also some evidence of parties who were below there, in the field or near the barn of Mr. Bradford, whose attention was attracted to the accident by the noise, and who claim that the character of the noise would correspond with the conditions and affairs claimed by the defendants. . . .

As to the claim of the defendant that the horses, harness and wagon were unroadworthy, it has not been shown that Mrs. Card knew of the condition of the horses or harness, if either was unroadworthy, on that occasion. The only positive evidence in regard to that would seem to be the other way. While the evidence is that Mrs. Card was quite a horsewoman and knew about handling horses very well, yet the testimony of Mr. Slingerland and his daughter is to the effect that upon that occasion, when they were driving up to the berry patch, she spoke of this bay colt that is particularly claimed to have been vicious, and remarked upon his being gentle and pulling well. And except for the circumstance that the tugs unfastened on the way home, once, or perhaps twice, as you view the evidence, there is no evidence that the unroadworthiness of the harness, if it was unroadworthy, was suggested to her. [She would not, therefore, be convicted of what we know as contributory negligence because of the use of this conveyance or harness or of these colts, even if they were what the defendant contends, and even though Mr. Slingerland knew it. According to the evidence she was riding with Mr. Slingerland

by invitation, and without any knowledge, and unless there was something more apparent than has been shown here, she would not be called upon to say "this is something that I will not trust myself to," so as to be convicted of contributory negligence if she did not speak out in that way. Of course I do not mean to suggest that this was the character of the horses, harness or wagon.] [3] There is evidence that it was not, as well as that it was. You are to determine from the evidence what the real facts were as to this matter. If you find that the contention of the defendant on these points is not sustained, but that these horses were sufficiently well trained and roadworthy; that this harness such as is ordinarily used and in ordinary condition, and the conveyance the same, then the conclusions which the defendant seeks to draw from their unroadworthiness fail, because if the facts are not established, no conclusions can be drawn from them. But if you find that the horses were vicious and the conveyance was unroadworthy, then, while Mrs. Card might not be affected with contributory negligence, she would be affected by that circumstance to this extent: If that was the condition of things, we should then have an extraordinary risk. It would not be the ordinary risk of travel. It would be something that the township would not be called upon to anticipate or provide against; and even though Mrs. Card was traveling with another person who was really responsible for the condition of things, while she would not stand exactly as Mr. Slingerland would if he were prosecuting a suit, yet the risk would be something out of the ordinary, and something which the township was not called upon to anticipate and provide against. The law would not cast upon it the duty of anticipating and providing against vicious and untrained horses and unroadworthy harnesses and wagons. If that was the condition of the horses, wagon or harness, and that condition of things caused the accident, then the negligence of the township, if any, in not guarding the road at that point would not be the proximate cause. The accident would originate in something that it would not be called upon to provide against, it only being required to anticipate that which would arise from ordinary horses in ordinary condition, and from ordinary harnesses and conveyances.

[Presenting to you the other alternative, if, as the plaintiff

contends, the colts were not vicious nor the harness or its fastenings unsuitable, if, without anything of this kind, a tug or tugs unfastened and the tongue fell, the colts became frightened and started, but were held back by Mr. Slingerland the best he could until they pulled loose from the wagon, pulling the lines through his hands; that the wagon then went over the bank for want of a guard, and you believe the circumstances to which I allude fall within the ordinary risks of travel; that the township was negligent in not having a guard at that place, and that if they had the accident would not have occurred, and the death of Mrs. Card would not have been caused, then the neglect of the township would be the controlling cause of the accident, and the plaintiff would be entitled to recover.] [4]

The jury after retiring having come back into court, upon a question from one of the jurors, the following further instructions were given:

[I understand that you want some instruction as to who would be responsible for Mr. Slingerland's negligence in failing to properly control the team. As to that, I do not think that Mrs. Card would be chargeable with his immediate negligence. I endeavored to explain to you how far she would be chargeable with his negligence where it produced that which was outside the ordinary risks of travel. But the mere failure to properly manage the team upon that occasion if it did not amount to this, could not be charged to her. I trust, gentlemen, that this instructs you upon what you have desired to know.] [12]

The jury were subsequently called back into court by the trial judge, and the following colloquy ensued: .

[The Court: I presume that you have not yet agreed, because you have made no announcement that you have, but as you have now had the case under consideration nearly ten hours, and it is getting well along on Saturday night, I venture to urge upon you your duty to endeavor to agree. Allow me to suggest that you were sent out to agree and not to disagree, and that it is your duty to do so if you possibly can. It would be a great hardship to the parties and a large expense to the county to have this case tried over again. We have been trying it all the week, and upon a retrial it would not take any less time, I am sure. There are a large number of witnesses upon both sides and the expense of getting them here is very

heavy. This case has got to be disposed of by twelve men; why not by you twelve who are in the box? They will hardly get a jury who are better able to dispose of it than you. We have to yield our differences in the affairs of ordinary life, or as it is sometimes said we have to give and take. This is no more than saying that we have to modify our judgment according to the judgment of our fellows. That is my experience with my colleagues in my judicial duties, and why not also in the jury box? I make these suggestions for the purpose of endeavoring to assist you to a verdict, and if I can throw any further light upon any question in the case or repeat any instructions which I have given, I will be glad to do so.

A juror: I forget whether Mrs. Card left any young children or not.

The Court: She left three children; one of them, the oldest son, is twenty-six, Leon is sixteen, and the daughter, Mrs. Lillian Baker, is married.

Another juror: Your Honor, I think we can agree very shortly.

The Court: I am glad to hear you say so, and let me suggest if you are going to agree I hope you will do so in time so that those of us who are going away by the train will be able to take it.

A juror: Just what time does the train leave?

The Court: I think it leaves a few minutes before nine. You may now retire, gentlemen, and endeavor to arrive at a verdict.] [13]

Plaintiff's points and the answers thereto among others were as follows:

5. If Mrs. Card at the time of the accident was riding by invitation in the wagon of Asa Slingerland, a voluntary carrier, and had no control of said Slingerland or his wagon or horses, the negligence of Slingerland, if there was any, cannot be imputed to her, nor operate to prevent a recovery in this case. *Answer:* I have endeavored to explain to you how she would be affected by any neglect of Mr. Slingerland in providing proper horses, conveyance and harness, and I will briefly repeat it. Mr. Slingerland's negligence, if any, cannot be imputed to her as negligence contributing to the accident and so barring a recovery on that ground. If this is what this point means I am

prepared to affirm it.   But still I must repeat, as I stated in my general charge, that if Mr. Slingerland had vicious horses and a defective harness, and thus imposed an extraordinary risk upon the township in that way, then Mrs. Card, traveling with him, even though voluntarily, would be affected by that circumstance, and if that was the condition of affairs it might be sufficient to prevent a recovery. [5]

7. If the jury believe that the explanation given by Joseph B. Card of how and under what circumstances he made the statements detailed by him and other witnesses on the stand, in reference to the horses, harness, wagon, etc., of Asa Slingerland, with whom his wife, Fanny R. Card, deceased, was riding at the time of the accident, the jury should disregard such statements in reaching a verdict.   *Answer:* I cannot instruct you that you must disregard it.   But I will say to you that you may and ought to consider the circumstances under which these statements were made, and if there is anything in the evidence that explains them away, then that certainly should be taken into consideration, in determining how much weight you will give to these statements of Mr. Card. [6]

Defendant's points and the answers thereto among others were as follows:

1. That under all the evidence in the case the plaintiff is not entitled to recover, and your verdict should be for the defendant.   *Answer:* That point is refused. [7]

4. To render the township of Columbia liable in this case for the death of Mrs. Card, the want or absence of a barrier at the point where the wagon went over the bank must be found by you under the evidence to be the sole, efficient and proximate cause of the injury; and if the jury find from the evidence that this accident was caused from the tug or tugs becoming detached from the whiffletrees, the wagon pole dropping to the ground, and the horses becoming frightened, at some distance above the accident, and by reason of this fright ran away or were uncontrollable and that Asa Slingerland the driver, could not guide the horses nor control them at the point of the accident or above there, or from this cause concurring with the defective highway by reason of absence of barriers or railing, then and in either case your verdict must be for the defendant township.   *Answer:* This point I will divide.   " To render the township of

Columbia liable in this case for the death of Mrs. Card, the want or absence of a barrier at the point where the wagon went over the bank must be found by you under the evidence to be the sole, efficient and proximate cause of the injury." This is a correct statement of the law, and is the same thing that I have already stated to you in my general charge. The remainder of the point is as follows: "If the jury find from the evidence that this accident was caused by the tug or tugs becoming detached from the whiffletrees, the wagon pole dropping to the ground, and the horses becoming frightened at some distance above the accident, and by reason of this fright ran away or were uncontrollable and that Asa Slingerland, the driver, could not guide the horses nor control them at the point of the accident or above there, or from this cause concurring with the defective highway by reason of the absence of barriers or railing, then and in either case your verdict must be for the defendant township." This part of the point I refuse. There are circumstances and considerations not included in what the point states which compel me to refuse it. I have, however, endeavored to instruct you carefully on that branch of the case in my general charge. [8]

6. If the jury are satisfied from the evidence that the tugs came unhooked from the whiffletrees, with the exception of one tug next to the bank, and the wagon pole or tongue dropped from the neck yoke to the ground, and the horses becoming frightened, ran some distance before reaching the point of the accident, with the pole dragging on the ground and the one tug clinging to the whiffletrees on the upper side, and the driver had lost control over the horses, and was unable under the circumstances to steer his wagon or control his horses, and you find that the tug next to the bank had a tendency to draw the wagon out of the ordinary traveled track and towards and over the declivity, and this was the proximate, sole and efficient cause of the accident and injury, it would be such an extraordinary occurrence that the defendant township would not be called upon to anticipate and provide against the same, and the plaintiff could not recover, and your verdict must be for the defendant. *Answer:* Refused. [9]

7. If the jury believe from the evidence that the horses of Asa Slingerland were running away, coming down Bailey Hill road, and the accident was caused by such running away of the

colts, it would be such an accident that the defendant township would not be required to foresee or anticipate, and your verdict would be for the defendant. *Answer:* Refused. [10]

8. The defendant township is not required to construct its roads or guard declivities at any place along the highways to insure people using them against accidents caused by negligence in the slightest degree or from accidents caused by horses running away and over which the driver has no control, and if the jury believe that the injury complained of in this case was caused by the defective harness and the tugs becoming detached from the whiffletrees, the wagon pole dropping down, and that the horses began to run away some ten or twelve rods above the point of accident, and the driver had lost control of his horses, and was unable to steer or control their course, or if the one tug which still remained hitched to the upper side (if you so find) had a tendency and did pull the wagon out of the traveled way and over the declivity, it was such an accident that the township authorities were not responsible for, and were not bound to provide against, your verdict should be for the defendant. *Answer:* Refused. [11]

Verdict and judgment for plaintiff for $2,800. Defendant appealed.

*Errors assigned* were (1–13) above instructions, quoting them; (14–29) rulings on evidence, sufficiently set out in the opinion of the Supreme Court.

*A. C. Fanning* and *Wm. Maxwell*, with them *Rockwell & Mitchell*, for appellant.—Evidence that after the occurrence of the injury the defendant repaired the place where the injury occurred or discharged a negligent servant, is inadmissible, since to admit such evidence would be to place a premium upon the continuance of negligence: 16 Am. & Eng. Ency. of Law, 457.

While one is responsible for such consequences of his fault as are natural and probable and might therefore be foreseen by ordinary forecast, if his fault happens to concur with something extraordinary, and therefore not likely to be foreseen, he will not be answerable for the extraordinary result: Schaeffer v. Jackson Twp., 150 Pa. 145; Township of Jackson v. Wagner, 127 Pa. 184; Twp. of West Mahanoy v. Watson, 112 Pa. 574;

Herr v. City of Lebanon, 149 Pa. 222; Chartiers Twp. v. Phillips, 122 Pa. 601; Kieffer v. Hummelstown Borough, 151 Pa 304; Yoders v. Amwell Twp., 172 Pa. 447.

*W. J. Young* and *E. B. Parsons*, with them *H. T. Ames*, for appellee.—The first assignment of error asks the court to reverse a long line of decisions, commencing with Pennsylvania Railroad Co. v. Henderson, 51 Pa. 315, and ending with Lederman v. Penna. R. Co., 165 Pa. 118.

Where the driver of a vehicle is not a common carrier, and an accident occurs to the one riding with him, through the concurrent negligence of the driver and the supervisors of the road, the negligence of the driver cannot be imputed to the passenger where the latter did not contribute to the accident: Township of Crescent v. Anderson, 114 Pa. 643; Borough of Carlisle v. Brisbane, 113 Pa. 544; Carr v. City of Easton, 142 Pa. 139, Burrell Twp. v. Uncapher, 117 Pa. 353.

If there are two concurrent causes, one of which is produced by the negligence of the township, there may be recovery: Burrell Twp. v. Uncapher, 117 Pa. 353.

Proximate cause is a question of fact for the jury, whenever the facts or inferences therefrom are in dispute: Potter v. Gas Co., 183 Pa. 575; Hoag v. Lake Shore, etc., R. R. Co., 85 Pa. 293; Wilson v. Penna. R. Co., 177 Pa. 512.

OPINION BY Mr. JUSTICE McCOLLUM, May 8, 1899:

The plaintiff contends that the cause of the occurrence which resulted in the death of his wife was the neglect of the defendant to maintain a proper guard rail or barrier at the point in the road where the wagon left it, and the defendant contends that it was caused by a combination of circumstances which the township was not bound to anticipate or guard against. Later on he will specify the circumstances and consider their relation to the occurrence.

The main purpose of the evidence introduced by the plaintiff was to sustain his claim of negligence on the part of the township and to repel the charge of contributory negligence on the part of the owner and driver of the horses and wagon. In addition to the evidence descriptive of the grade, width and condition of the road in the vicinity of the occurrence, he in-

troduced evidence showing that other persons had met with similar occurrences at or near to the place of the occurrence in question.   The plaintiff also introduced evidence showing that soon after the occurrence under consideration the township widened the road at or near the point where the wagon left it, and erected a fence or guard rail there with the view of reducing the risks attending travel at that point.   With this brief summary of the principal evidence submitted by the plaintiff in support of his contention, we proceed to note the circumstances which constitute the principal reliance of the township for exemption from liability for the consequences of the occurrence which is the subject of this suit.

The circumstances which, according to the contention of the township, constitute the efficient and controlling cause of the occurrence were developed while Slingerland, a voluntary carrier of the persons riding with him, was driving down the Bailey road some distance above the point where the wagon left it, and they may be summarized and specified as follows, to wit: three of the four tugs attached to the whiffletrees suddenly became detached from them, the wagon pole dropped to the ground, the horses became frightened, the driver was unable to control them, and they ran down the road until they were stopped some distance below the place where they broke away from the wagon.   The circumstances were so closely connected that they may seem to constitute a single circumstance. Be this as it may we have specified them in their order.

There is some conflict in the evidence respecting the circumstances and the cause of them.   As illustrating the conflict we refer to the evidence showing that it was not unusual for the tugs to become detached from the whiffletrees, and to the evidence tending to belittle and discredit it; to the evidence showing that the horses were vicious and skittish, and to the evidence showing that they were well broken and docile; to the evidence showing that the appliances by which the tugs were attached to the whiffletrees were faulty in construction or unreliable by reason of long continued use, or want of proper repair, and to the evidence showing they were in good condition and comparatively safe.   There is one item of evidence, however, which is undisputed.   It is the admission that, on the day and about a mile from the place of the occurrence to which this litigation

relates, one of the tugs, at least, became detached from the whiffletree while Slingerland was driving down Gafford hill. This hill was on, or a part of, the Bailey road.

Sixteen of the twenty-nine specifications of error filed in the case relate to rulings upon offers of evidence, six are based on excerpts from the charge, two on the answers to the plaintiff's fifth and seventh points, and five on the answers to the defendant's first, fourth, sixth, seventh and eighth points. The twenty-eighth and twenty-ninth specifications of error are not in conformity with the rule of court and are therefore dismissed. No summary or part of the evidence objected to is included in either of them.

We do not find in the twenty-fourth, twenty-fifth, twenty-sixth or twenty-seventh specification any cause for reversing the judgment. The rejected offers related to the construction of the appliances connecting the tugs with the whiffletrees; they were to show by the opinions of witnesses that no prudent or reasonably careful driver would use them and that to use them in driving down a hill would be an act of negligence. We are not willing to say that there was error in the rejection of such offers. The ruling complained of in the twenty-third specification is not objectionable. The course of the wagon, after three of the tugs were detached from the whiffletrees, and the pole dropped to the ground, was plainly marked by the pole, and opinions respecting its course under such circumstances were not only inadmissible but of no account. There is nothing in the twenty-second or twenty-first specification which requires discussion. The alleged statement of Beardslee that "some one had tried to break his colt and had made a bad job of it" was unimportant, and the explanation by the plaintiff that his statements based on what he heard immediately after the death of his wife proved, upon investigation to be incorrect was clearly admissible. It was for the jury to determine what effect should be given to the explanation. There is nothing in the eighteenth, twentieth, nineteenth, seventeenth, sixteenth, fifteenth or fourteenth specification which requires special notice. It is admitted by the defendant that evidence of other and similar accidents in the vicinity of the occurrence in question is admissible, and we discover no reasonable cause to complain that evidence descriptive of the condition of the Bailey

road and the nature and extent of Slingerland's injuries was received.

The excerpt from the charge which is the subject of the first specification of error does not include what was said in connection with and qualifying it.   As is too often the case, the appellant selected a single sentence from that portion of the charge relating to the erection of a guard rail after the accident, and neglected to mention what was said in connection therewith. This method of specifying alleged error is unfair to the trial court and condemned by the appellate court.   It does not appear that the evidence to which the excerpt relates was objected or excepted to, or that a motion was made to strike it out.   It has been decided by this Court that the learned judge of the trial court cannot be convicted of error for commenting upon irrelevant or incompetent evidence so received.   While this is a sufficient answer to the first specification, we may add that the defendant has not cited any decision of this Court which overrules its decisions in the numerous cases in which it has been determined that such evidence as the excerpt relates to is admissible.

The excerpt from the charge on which the second specification of error is founded relates solely to the plaintiff's contention and contains nothing which can be construed as an approval of his claim respecting the cause of the occurrence.   The excerpt on which the third specification is based is to the effect that the evidence is not sufficient to charge Mrs. Card with contributory negligence, and as defendant's counsel declare in their printed argument that they were not seeking to convict her of such negligence a discussion of the subject is not called for.

The fourth specification of error will be considered with the eighth, ninth, tenth and eleventh specifications.

The defendant has no cause to complain of the answers to the plaintiff's fifth point.   It is in line with the instruction that a finding of the facts as claimed by the defendant would bar a recovery by the plaintiff, because they would constitute an extraordinary risk which the township is not required to anticipate or guard against.

The answer to the plaintiff's seventh point is also unobjectionable.

An affirmance of the defendant's first point would have constituted plain error.  The conflict in the testimony to which we have already referred necessitated a reference of the case to the jury for the ascertainment of the facts.

Did the learned court below err in refusing to affirm the defendant's fourth, sixth, seventh and eighth points or either of them?  The court divided the fourth point, affirmed the first part of it and refused to affirm the remainder.  The part refused stated the circumstances we have already specified herein and which, the defendant contends, constitute the efficient and controlling cause of the occurrence under consideration.  The court said there were circumstances and considerations not included in the point, but did not state what they were.  The other points were not divided, but were refused in toto and without explanation or statement of the grounds of the refusal.  The circumstances specified in the points were not the result of a defect in the road.  The tugs became detached from the whiffletrees and this was the primary cause of the casualty complained of.  As a consequence of it the wagon pole dropped to the ground, the horses were frightened and ran away, and the driver was unable to guide or control them.  None of these circumstances is chargeable to the negligence of the township.  Its negligence lies in its failure to erect a barrier at the place where the wagon went down the slope.  There is some evidence tending to show that the appliances connecting the tugs with the whiffletrees were defective, and if so they may properly be considered as the cause of the tugs becoming detached as above stated.

We conclude, upon a careful consideration of the case at bar and of the cases analogous to it, that the circumstances specified in the defendant's fourth, sixth and eighth points constitute the dominating and proximate cause of the occurrence which is the subject of this litigation.  Among the cases which are analogous in principle to the case at bar we note Chartiers Twp. v. Phillips, 122 Pa. 601, Herr v. City of Lebanon, 149 Pa. 222, Schaeffer v. Jackson Township, 150 Pa. 145, and Kieffer v. Hummelstown Boro., 151 Pa. 304.  Willis v. Armstrong County, 183 Pa. 184, is quite like the case at bar.  In that case, " after the wagon in which the plaintiff and several others were riding had safely passed over the bridge and proceeded up the hill

fifty or sixty feet, the eyes in two traces gave way and this resulted in freeing the horses from the wagon and from the control of the driver. Being thus situated the wagon ran back down the grade, and missing the bridge went over the embankment into the stream below." It was held that the absence of guard rails was merely the remote cause of the injury the plaintiff received, and that "the sole efficient and proximate cause was the breaking of the harness, in consequence of which the control of the wagon was lost." The only distinction between that case and this is that in that the traces gave way while driving up a hill and in this the tugs became detached while driving down a hill. In Habecker v. Lancaster Township, 9 Pa. Superior Ct. 553, it was conceded that the township was negligent in not erecting a barrier at the quarry hole, and held that the sole cause of the accident was the breaking of the holdback straps and that the township was not liable. In that case, as in ours, the accident occurred while driving down a hill. Judge RICE, speaking for the court, said : " The township officers were under no more obligation to foresee the breaking of a holdback strap going down hill than the breaking of a trace going up hill, and were under no plainer obligation to provide against the consequences in one case than the other." If, in the case at bar, the jury find the facts as claimed by the defendant it cannot possibly be distinguished from the cases last cited.

We sustain the fourth, eighth, ninth and eleventh specifications of error and dismiss the other specifications.

Judgment reversed and venire facias de novo awarded.