## Maus, Appellant, *v.* Mahoning Township.

*Practice, C. P.—Verdict—Judgment—Trespass.*

In an action of trespass against a township an entry of judgment "in favor of the defendant" by the prothonotary who signs his own name, is not fatally defective although the verdict of the jury returned some days before was "We find the said defendant township not guilty."

*Evidence—Record—Certificate—Completeness of record.*

The fact that the certificate of the record of a "road proceeding" in another county states "in the court of quarter sessions in and for said county, it is, inter alia, thus contained," does not of itself imply that the record is not complete.    The words "inter alia" referred to other records and not to other parts of the same record.

*Road law—Width of road—Commissioners—Act of February* 27, 1882, *P. L.* 35*—Evidence.*

Viewers appointed under the act of February 17, 1822, P. L. 35, have no power to fix the width of a road, and the record of their report is not legal evidence to establish the width.

*Negligence—Township—Unguarded embankment—Fright of horse—Bicycle.*

In an action against a township to recover damages for injuries sustained by reason of a horse taking fright at a bicycle at a point on a public road where there was an unguarded embankment, it is error for the court to as-

sume that the frightening of a horse by reason of an approaching bicycle, is such an extraordinary occurrence that the township could not reasonably be expected to have provided against it.

*Trial—Charge—Answers to points.*

Affirmance of points based upon facts which have no existence in the case, although abstractly correct, tends to confuse the jury, and is ground for reversal.

Argued Jan. 11, 1904.   Appeal, No. 7, Jan. T., 1904, by plaintiffs, from judgment of C. P. Montour Co., Oct. T., 1899, No. 78, on verdict for defendant in case of Franklin N. Maus and Charles M. Maus v. Mahoning Township.   Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ.   Reversed.

Trespass to recover damages for personal injuries and injuries to a horse and buggy.   Before Little, P. J.

At the trial the defendant made the following offer:

Mr. Ammerman: We offer a certified copy of the report of the viewers appointed by an act of general assembly of the commonwealth of Pennsylvania, passed February 27, 1822, for the purpose of laying out a state road from Pennsborough, in the county of Lycoming, through Washington to Danville, in the county of Columbia, for the purpose of showing the established, uniform and legal width of the road in question.   The same is a certified copy of the report in full from the records of the court of quarter sessions of the county of Columbia, bearing the seal of the clerk of the court of quarter sessions of said county.

Which certified copy is as follows:

Columbia County, *ss.*:

In the court of quarter sessions in and for said county it is, inter alia, thus contained: . . . . [2]

The verdict as recorded was as follows:

Now, February 28, 1902, jury returned a verdict at 4 P. M., viz: We find the said defendant township not guilty.

Judgment was entered as follows:

Now, December 19, 1902, jury fee of $4.00 having been paid into court, judgment is entered in favor of the defendant, Mahoning township.

Plaintiff appealed.

*Errors assigned* were (1) entry of judgment on the verdict; (2) ruling on evidence, quoting the bill of exceptions ; (3–14) various instructions.

*H. M. Hinckley*, with him *W. J. Baldy*, for appellant.—Judgment must follow the verdict: Moser v. Mayberry, 7 Watts, 12 ; Frisbie v. McFarlane, 196 Pa. 110 ; Park v. Holmes, 147 Pa. 497.

The certificate is that in the quarter sessions, " among other things " it is thus contained.. This of itself shows that it is not an entire record : Larned v. Sharpe, 5 Montg. Co. Law Rep. 31.

The very fact that only the report of the viewers is certified shows that it is not the entire record : Bonesteel v. Sullivan, 104 Pa. 9.

The defendant township was negligent in not providing guard rails : Yoders v. Amwell Twp., 172 Pa. 447.

The fright of a horse is so common a thing that the township authorities are bound to provide against it, and their duty to so provide is not dependent upon whether the thing the horse frightens at is an ordinary or extraordinary thing : Pittston Boro. v. Hart, 89 Pa. 389 ; Dixon v. Butler Twp., 4 Pa. Superior Ct. 333 ; Bitting v. Maxatawny, 177 Pa. 213 ; Boone v. East Norwegian Twp., 192 Pa. 206.

There was no evidence of contributory negligence : Wilson v. O'Hara Twp., 14 Pa. Superior Ct. 258 ; Templeton v. Warriorsmark Twp., 200 Pa. 165.

*R. Scott Ammerman*, for appellee.—The verdict as rendered conforms to the intention of the jury ; the finding determines the matter of fact in issue and the verdict and judgment entered thereon should not be disturbed: Scarborough v. Thornton, 9 Pa. 451; Friedly v. Scheetz, 9 S. & R. 156 ; Beyerle v. Hain, 61 Pa. 226.

There is no authority for alleging that the term " inter alia " shows to this court that this particular record is defective in anything ; there is no reason for such an interpretation of the phrase. There was no negligence of the defendant township in not providing guard rails: Yoders v. Amwell Twp., 172 Pa. 447 ; Trexler v. Greenwich Twp., 168 Pa. 214.

A person who knows a defect on a highway, and voluntarily undertakes to test it when it could be avoided, cannot recover against the municipal authorities for losses incurred through such defect: Whart. on Neg. sec. 440; Hill v. Tionesta Twp., 146 Pa. 11; Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; City of Erie v. Magill, 101 Pa. 616.

OPINION BY BEAVER, J., April 18, 1904:

In the action of trespass, the trial of which we are called to review, the plaintiffs sought to recover from the defendant township damages for injury to their property which they alleged were sustained by reason of negligence in maintaining a roadway too narrow for ordinary travel, with precipitous sides unprotected by guard rails.

1. The jury returned the verdict, "We find the said defendant township not guilty." The judgment entered thereon was, "Now, December 19, 1902, jury fee of four dollars having been paid into court, judgment is entered in favor of the defendant, Mahoning township." It is true that a judgment must conform to or be in consonance with the verdict. That is, as we understand it, that the judgment must not depart in substance from the verdict. This is not denied by the appellants but they contend that, although a verdict is always received with the understanding that the court may change it in manner or form but not in matter or substance, it is the duty of the court to make whatever change is necessary at the time of its receipt, and that to receive and record the verdict and subsequently, in entering the judgment, to depart from it in any material particular is a fatal defect which must cause a reversal.

The question in this case was the negligence of the township. The verdict of "not guilty" was a finding in favor of the township, hence the entry of the judgment for the defendant on a verdict which finds "the defendant not guilty" is, for all practical purposes, identical with the verdict. If there were nothing else in the case and we took a different view of it, it would only be necessary to send the case back to have the judgment directed by the court instead of having it entered, as appears upon the record, by the prothonotary, who signs his own name, instead of "by the court.".

Whilst it is true that in the abstract of proceedings the verdict seems to be "We find the said defendant township not guilty," in the stenographer's notes of the trial, certified by the court, as constituting the record of the case, the statement is, "Verdict returned at 3 : 36 P. M. as follows : We find a verdict in favor of the defendant." It is somewhat difficult to tell under these circumstances just what the verdict was, but in any event we do not regard the entry of the judgment in the form in which it is now found as reversible error, assuming that the appellant's statement as to the form of the verdict is correct.

2. The defendant, in the course of the trial, offered "a certified copy of the report of the viewers appointed by an act of general assembly of the commonwealth of Pennsylvania passed the 27th day of February, 1822, for the purpose of laying out a state road from Pennsboro in the county of Lycoming, through Washington, to Danville in the county of Columbia, for the purpose of showing the established uniform and legal width of the road in question. The same is a certified copy of the report in full from the records of the court of quarter sessions of the county of Columbia bearing the seal of the clerk of the court of quarter sessions of said county." This was objected to on the ground that the certificate itself showed "in the court of quarter sessions in and for said county, it is, inter alia, thus contained," etc., which of itself implies that the record was not complete.

We do not think this objection well taken. The "inter alia" refers to other records and not to other parts of the same record. It is the usual expression and does not imply incompleteness of the particular record certified.

We have serious doubts, however, of the competency of the record, as conclusive of the fact to establish which it was offered. Turning to the act in question—February 27, 1822, P. L. 35—we find the duties of the commissioners clearly defined as follows : "Section 3. That it shall be the duty of said commissioners to make out a draft of said road, to be deposited in the office of the secretary of the commonwealth, and they shall also deposit a copy of said draft in the office of the clerk of the courts of quarter sessions of the respective counties through which the said road may pass, which shall be a

record thereof, and from thenceforth the said road shall be, to all intents and purposes, a public highway and shall be opened and repaired in all respects as other roads are opened and repaired which are laid out by order of the courts of quarter sessions of the counties aforesaid."

The width of the road seems to have been fixed by the commissioners and no confirmation thereof made by the court. There is no authority contained in the act giving the commissioners power to do this. On the contrary, they are to " file the draft of the road in the office of the clerk of the courts of quarter sessions of the respective counties through which the said road may pass, which shall be a record hereof, and from thenceforth the said road shall be, to all intents and purposes, a public highway." But, by the terms of the act, it " shall be opened and repaired in all respects as other roads are opened and repaired which are laid out by order of the courts of quarter sessions of the counties aforesaid."

By the Act of April 6, 1802, 3 Sm. L. 512, at the end of the first section it was provided : " The court shall direct of what breadth the road shall be opened, which shall not in any case exceed fifty feet." The fixing of the width, therefore, was the duty of the court and not that of the viewers. This being the case, the report of the viewers was not evidence of the width of the road, inasmuch as they had no power to determine that question. It follows that the report should not have been received in evidence for the purpose for which it was offered. The draft was doubtless evidence as to the location of the road as laid out by the commissioners. It was not evidence for any other purpose. See In re road Jonestown to Wilkes-Barre, 1 S. & R. 487.

3. The plaintiffs were approaching Danville in a buggy drawn by a single horse. Coming in an opposite direction was a bicyclist upon his wheel riding rapidly. The horse, which, so far as appears from the evidence, was an ordinary roadster, shied and went down the embankment at the side of the road with the buggy and its occupants, there being admittedly no guard rail there. There was nothing extraordinary in the situation. A bicycle was a well known vehicle of locomotion. Its rider had a right upon the road. Whether he rode slowly or rapidly, the road should have been in such condition

as to be safe for the bicycle and the buggy with the horse attached at the same time. It was the duty of the supervisors of the township to have it in reasonably safe condition and it was equally their duty to have anticipated such a condition of things as existed at the time of the accident.

The court below was besieged with a series of points, based upon the exceptional and extraordinary cases which are found in our books and which, if the circumstances had been of the same character, could have been unquestionably properly affirmed but to affirm them, without distinguishing between the conditions or circumstances which existed in the cases upon which they were based and those of the case under consideration, was erroneous. This was especially true of the twenty-third and twenty-fifth points of the defendant. They had no application to the case under consideration and should have been refused for that reason. The answers tended only to confuse the jury.

The cases relating to this general subject have been collected and commented upon lately in numerous opinions of this court : Dixon v. Butler Twp., 4 Pa. Superior Ct. 333, and especially in Cage v. Franklin Twp., 11 Pa. Superior Ct. 533, and in Closser v. Washington Twp., 11 Pa. Superior Ct. 112. What was said in the latter case applies here. " The cause of the fright of the horse was one which should have been foreseen." Bicycles were in constant use, were liable to be encountered at any point in a public road and, with a declivity on both sides of a road such as was shown in this case, there was danger to be reasonably apprehended. In view of this, was there such provision made by the supervisors as to make the road reasonably safe ? This is a case in which the fact of the accident is not in itself conclusive evidence of negligence on the part of the township authorities. It is some evidence but, in view of what was testified as to the width of the road, as to the height and angle of the declivities and the general conditions surrounding the situation, we are of opinion that the question of negligence is for the jury. Was the duty of the defendant met by provision for the ordinary and usual demands of the traveling public in that locality ? Was the erection of guard rails on the sides of the road necessary to provide for the safety of the public at that point ?

In this view of the case, we think there was error in what the court said in the general charge embraced in the fourth specification and in the affirmance of the defendant's eighth point embraced in the seventh specification of error. The court seems to have entertained the opinion that the frightening of a horse by reason of an approaching bicycle was such an extraordinary occurrence that the township could not reasonably be expected to have provided against it. We cannot take this view of the case. It was an everyday occurrence; it was to be expected at any moment, at any point in the road. Was the condition of the road at that point such as might be reasonably expected to provide against it?

4. If negligence was shown to exist, was it the proximate cause of the injury? This was a question for the jury, and the instructions of the court below were, in the main, correct, but the affirmance of irrelevant points based upon facts which had no existence in the case, tended to confuse the jury, and may have influenced them in their finding upon this question which was for their consideration.

5. The court below very properly said that if the plaintiffs were guilty of contributory negligence in any degree, there could be no recovery. The evidence, however, of such contributory negligence is not readily apparent. They were following a number of other vehicles. For that reason the approach of the bicycle rider was not plainly apparent until he had passed the last preceding vehicle. There was evidence that other persons standing in a different relation to the plaintiffs and the bicycle rider could see his approach, and it may be there was sufficient to warrant the submission of the question to the jury. But, as was said previously in regard to other points which were affirmed, it seems to us that the eighteenth point—" A person who knows a defect in a highway and voluntarily undertakes to test it, when it could be avoided, cannot recover against the municipal authorities for loss incurred through such defect "—which was affirmed, should have been refused as having no relevancy to the case in hand. The plaintiffs were driving upon the road in the usual way. They were obeying the law of the road. If their testimony was believed, they did not see the approach of the bicycle rider until he was almost upon them. Whether they could

have turned to the left to give him the smooth side of the road without danger, it may be difficult to determine, and what the result of such a turning aside upon their horse might have been we cannot say. Under the circumstances, however, we are convinced that the affirmance of the defendant's eighteenth point, although abstractly correct, had no application to the circumstances of this case and was, therefore, erroneous.

The errors complained of, to which we have specially alluded, were of such a character that, although the general charge was in the main correct, the element of uncertainty was introduced into the case which may have influenced the jury unfavorably, and for this reason we think the case should be reversed.

Judgment reversed and a new venire awarded.