## Russell *v.* Westmoreland County, Appellant.

*Negligence—County bridge—Defect in bridge—Fright of horse—Sudden danger—Proximate cause—Contributory negligence.*

Where a person without fault on his part finds himself suddenly in a position of danger, he is not held to the use of the best judgment, but only to good faith and reasonable prudence.

In determining what is proximate cause the true rule is that the injury must be the natural and probable consequence of the negligence, such a consequence as, under the circumstances of the case, might or ought to have been foreseen by the wrongdoer as likely to flow from his act.

The action of an ordinarily safe and tractable horse suddenly becoming frightened at the very place where a highway is negligently left in a dangerous condition and backing over the unguarded precipice, is not always to be regarded as one of those extraordinary occurrences which the public authorities cannot reasonably be expected to foresee and provide against.

The duty of a municipality, whether township, borough, city or county, having control of the highways is to keep them reasonably safe for ordinary travel by the ordinary horse. It is under no obligation to provide for everything that "may" happen upon them, but only for such things as ordinarily exist, or such as may be reasonably expected to occur.

An elderly woman driving a single horse and buggy ascended the approach of a county bridge on the left-hand side of the road, that being the commonly traveled and best part of the road. When she reached a point part way up the approach, and where there was no guard wall on the side, she stopped the horse to permit a team which suddenly came into view to pass. As the team came opposite them the horse became frightened and backed the buggy over the wing wall, resulting in serious injuries to its occupants. The plaintiff testified that "from the time we stopped our buggy and saw the wagon and until we actually fell over the wall we had no time to do anything; we might of jumped out and saved ourselves but we had no time to do it, it happened so quick; there were no guard rails at the side to keep people from going over the side." *Held,* that the case was for the jury, and that a verdict and judgment for plaintiff against the county should be sustained.

While under the local laws, Westmoreland county may not be liable for an accident due to a defect in a bridge caused by lack of repairs, of which

defect it had no notice, it is liable where the accident is due to defects in the original structure.

Argued April 20, 1904.  Appeal, No. 118, April T., 1904, by defendant from judgment of C. P. Westmoreland Co., May T., 1902, No. 500, on verdict for plaintiff in case of Mary Russell v. Westmoreland Co.  Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.  Affirmed.

Trespass to recover damages for personal injuries.  Before DOTY, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

The court gave binding instructions for defendant.

Verdict and judgment for plaintiff for $392.72.  Defendant appealed.

*Error assigned,* among others, was in giving binding instructions for defendant.

*Denna C. Ogden,* for appellant, cited: Heister v. Fawn Twp., 189 Pa. 253; Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; Chartiers Twp. v. Phillips, 122 Pa. 601; Davison v. Wilkes-Barre, etc., Traction Co., 10 Pa. Superior Ct. 442; Habecker v. Lancaster Twp., 9 Pa. Superior Ct. 553; Card v. Columbia Twp., 191 Pa. 254; Eby v. Lebanon County, 166 Pa. 632.

*V. E. Williams,* with him *W. T. Cline, A. M. Sloan* and *W. F. Wegley,* for appellee, cited: Francis v. Franklin Twp., 179 Pa. 195; Hookey v. Oakdale Borough, 5 Pa. Superior Ct. 404; Baker v. North East Boro., 151 Pa. 234; Wilson v. O'Hara Twp., 14 Pa. Superior Ct. 258; Cage v. Franklin Twp., 8 Pa. Superior Ct. 89; Bitting v. Maxatawny Twp., 177 Pa. 213; Gates v. Penna. R. R. Co., 150 Pa. 50; Dutton v. Lansdowne Borough, 198 Pa. 563; Brookville Boro. v. Arthurs, 130 Pa. 501; Dalton v. Upper Tyrone Twp., 137 Pa. 18; Newlin Twp. v. Davis, 77 Pa. 317; Rahenkamp v. Traction Co., 14 Pa. Superior Ct. 635; Penn Township v. Perry County, 78 Pa. 457; Com. v. Loomis, 128 Pa. 174; Westfield Boro. v.

Tioga County, 150 Pa. 152 ; Boone v. East Norwegian Twp., 192 Pa. 206 ; Yoders v. Amwell Twp., 172 Pa. 447.

OPINION BY RICE, P. J., November 21, 1904:

In 1845 the county erected a wooden bridge across Loyalhanna creek, and in 1889 replaced it with an iron bridge upon the same abutments.  These, however, were raised about a foot, and this necessitated filling in the roadbed constituting the ascending approach to the bridge to within from three to seven inches of the top of the wing wall in question.  This wall was perpendicular, and at the point of the accident was in the neighborhood of sixteen feet in height.  The plaintiff, a woman about sixty-nine years of age, and Mrs. Garris were driving a single horse and buggy along the highway which when it reaches the approach to the bridge, turns to the left. When they got part way up the approach they saw for the first time a team and driver coming across the bridge from the other direction.  They testified that their failure to see the team before they made the turn and started to drive up the approach, was due to the fact that their view was obstructed by trees and vines.  As to the obstruction of the view of one approaching the bridge in this direction, there was the corroborative testimony of other witnesses.  The approach not being wide enough for them to pass, the plaintiff and her companion stopped on the left side of the approach about twelve feet from the opening of the bridge, leaving a space on their right for the team to pass them.  When the team came opposite them, being quite close, their horse became frightened, evidently fearing that the team would run into them, and backed them over the wing wall, and all were cast into the stream below.  This, substantially, is the version given by the plaintiff and her witnesses of the accident.  The defendant's witnesses gave a somewhat different version, but as the assignments of error all go to the refusal of the court to give binding instructions for the defendant, we need not refer to the conflicts of evidence. They have been decided by the jury under adequate and impartial instructions of which no complaint is made ; therefore we have no concern whatever with the disputed questions of fact.

1. It is contended that the plaintiff and her companion were

guilty of contributory negligence because they voluntarily and unnecessarily took a position of obvious danger on the wrong side of the road. With regard to this contention, it is to be observed, that under their testimony they were driving in the commonly traveled part of the way and upon the left side because that was the best part of the road. John Martin, who superintended the work for the contractor who built the bridge, testified upon this point as follows: " Q. Were there any obstructions or washouts on that road? A. Not on that side; there is on the right-hand side; . . . . sort of ditch comes down towards the by-road. The foot of the fill made it a little steeper at that side that people naturally kept to the level side and do to this day. Q. Would one be close to the wing wall? A. Close to the wing wall the side they went over. The wing wall on the other side remains the same as it was and is to-day only six inches above the roadbed." It is to be observed further that according to their testimony, they did not leave a place of safety and take this position after they saw or ought to have seen the team on the bridge, but that they simply stopped and waited for the team to pass. They were so close to the bridge that it is questionable, to say the least, whether it would have been prudent for them to proceed further or attempt to turn around; and, owing to the insufficient barrier on the other side of the road, it is not clear that they would have been safer if they had attempted to drive over to that side after the team came in sight. It is suggested that the plaintiff, who was not driving, ought to have got out and held the horse by the head until the team had passed; but it is to be borne in mind that she was an aged woman, inferably not able to move quickly, and that there was but little time for deliberation. Upon this point she testified that " from the time we stopped our buggy and saw the wagon and until we actually fell over the wall we had no time to do anything; we might of jumped out and saved ourselves but we had no time to do it it happened so quick; there were no guard rails at the side to keep people from going over the side." This testimony plainly distinguishes the case from Heister v. Fawn Township, 189 Pa. 253, not only as that case is originally reported but as it is explained in Davis v. Snyder Township, 196 Pa. 273. Where a person without fault on his part finds himself in a position of

danger, he is not held to the use of the best judgment but only to good faith and reasonable prudence: Malone v. Pittsburg & Lake Erie R. R. Co., 152 Pa. 390. The rule upon this subject was thus stated, and the authorities supporting it cited, by our Brother ORLADY in Shaughnessy v. Consolidated Traction Co., 17 Pa. Superior Ct. 588: "If a man has got himself, without negligence, into a position of danger, he is not responsible if he makes a mistake of judgment in getting out: Penna. R. R. Co. v. Werner, 89 Pa. 59; Baker v. North East Borough, 151 Pa. 234. One who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment, fails to act in the most judicious manner, is not chargeable with negligence: Brown v. French, 104 Pa. 604; Hookey v. Oakdale Borough, 5 Pa. Superior Ct. 404; Conyngham v. Erie Electric Motor Co., 15 Pa. Superior Ct. 573. Such an act is not to be judged by the rules which are applicable ordinarily to acts done in cold blood, with time and opportunity for the party to consider the consequences and the methods of the act he is about to commit: Donahue v. Kelly, 181 Pa. 93." See also Bard v. Phila. & Reading Railway Co., 199 Pa. 94. There was warrant in the testimony adduced by the plaintiff for the application of these principles, and therefore the court committed no error in submitting the question of contributory negligence to the jury.

2. It is further contended that the fright of the horse, not the absence of a guard rail or other sufficient barrier, was the proximate cause of the injury. In determining what is proximate cause, the true rule is that the injury must be the natural and probable consequence of the negligence, such a consequence as, under the circumstances of the case, might or ought to have been foreseen by the wrongdoer as likely to flow from his act: Hoag v. Lake Shore, etc., R. R. Co., 85 Pa. 293. Whilst the rule upon the subject is well settled, the difficulty has been in the application of it to the facts of the innumerable cases that have arisen. It is true there are cases in which it has been held to have been the duty of the court to declare as matter of law that the negligent omission to provide a guard rail at a point like that in question, although concurring with the fright of the horse, was not the proximate cause of the accident. Many of the cases of this class are collected in Card v. Colum-

bia Township, 191 Pa. 254. For the most part they were decided upon the ground that it appeared in the presentation of the plaintiff's own case that the accident was produced by an intervening or independent or unrelated cause, the happening of which the defendant could not reasonably be expected to foresee and provide against, as for example the breaking of traces, Willis v. Armstrong Co., 183 Pa. 184; Card v. Columbia Township, 191 Pa. 254; the giving way of hold-back straps, Habecker v. Lancaster Township, 9 Pa. Superior Ct. 553; the choking of the horse by a too small collar, Chartiers Twp. v. Phillips, 122 Pa. 601; or his fright from an extraordinary cause at a point distant from the place of the accident, Schaeffer v. Jackson Township, 150 Pa. 145. None of these cases, however, goes to the extent of deciding as an abstract proposition of law, to be applied without regard to the circumstances, that the action of an ordinarily safe and tractable horse suddenly becoming frightened at the very place where the highway is negligently left in a dangerous condition and backing over the unguarded precipice, is always to be regarded as one of those extraordinary occurrences which the public authorities cannot reasonably be expected to foresee and provide against. On the contrary, in Herr v. City of Lebanon, 149 Pa. 222, which belongs to this class of cases and fairly illustrates the practical distinction between them and the case at bar, Mr. Justice WILLIAMS, speaking for the court, said: " If, therefore, in the ordinary use of the street one had been crowded over the bank by the volume of travel, by the sudden shying of his horse, or by reason of an accumulation of ice upon the roadbed, the absence of the barrier might justify a recovery if the plaintiff was not guilty of contributory negligence, and so in part the author of his own misfortune. Such accidents may be said to be a probable result of the neglect complained of. If so, the city was bound to anticipate and provide against them, and its failure to do so was negligence." The duty of a municipality, whether township, borough, city or county, having control of the highways, is to keep them reasonably safe for ordinary travel by the ordinary horse. It is under no obligation to provide for everything that " may " happen upon them, but only for such things as ordinarily exist or such as may be reasonably expected to occur: 2 Dillon on Mun. Corp. sec. 1015; Cage v.

Franklin Township, 11 Pa. Superior Ct. 533. Under the facts of this case, as testified to by the plaintiff and her witnesses, the court was fully justified by closely analogous precedents and the reasoning upon which they are based, in refusing to charge that the absence of proper guards at the point where the plaintiff's horse became frightened, was not the proximate cause of the accident: Yoders v. Amwell Township, 172 Pa. 447; Bitting v. Maxatawny Township, 177 Pa. 213, 180 Pa. 357; Boone v. Township of East Norwegian, 192 Pa. 206; Davis v. Snyder Township, 196 Pa. 273; Closser v. Washington Township, 11 Pa. Superior Ct. 112; Wilson v. O'Hara Township, 14 Pa. Superior Ct. 258; Maus v. Mahoning Township, 24 Pa. Superior Ct. 624; Curry v. Luzerne Borough, 24 Pa. Superior Ct. 514.

3. The defendant's remaining proposition is that, under the Act of April 9, 1872, P. L. 1011, the county was not responsible for the condition of the approach to the bridge, because the supervisors of Loyalhanna township had not notified them thereof. The title of the act is " To require the county commissioners of Westmoreland county to repair county bridges on due notice from the supervisors of any township in which a county bridge is or may be erected." The act relates only to repairs, and we think the learned trial judge has quite clearly shown, in his opinion overruling the motion for a new trial, that the defects complained of were not occasioned by use, decay, injury, dilapidation or partial destruction, but existed in the original structure as it was left by the county in 1899 when it reconstructed the bridge. And this conclusion is supported by the testimony of John Martin who superintended the work for the contractor. Being asked how were those wing walls in elevation with respect to the level of the road when the bridge was finished, he answered : " The old roadbed was about eighteen inches below the top of the wing wall, and to make the approach to the new bridge level it had to be filled one foot, leaving it six inches practically about, is the wing wall above the roadbed. Q. At that time were there any guard rails or other protection than those six inches of wing wall? A. That was all; simply the coping above the fill." In Rigony v. Schuylkill County, 103 Pa. 382, where the duty of the county to repair county bridges within the limits of a bor-

ough was conditioned, by a special act of assembly, upon the determination of the borough auditors and notice by them to the county commissioners, that the cost would exceed $20.00, it was held that both prerequisites must concur before the county can be held liable for an accident due to want of repairs in a bridge. " If, however," (quoting from the syllabus) " there were obvious defects in the original structure, which the county negligently permitted to exist, the county will be liable for damages occurring by reason of such original defects."

Judgment affirmed.