## Borough of Pittston *versus* Hart.

1. It is the duty of a municipality to keep the approaches to dangerous places on its streets so guarded as to protect travellers. It must keep its streets in such order that even "skittish" horses may be employed without danger.

2. At a point on one of the principal streets of a town of about ten thousand inhabitants, a railroad runs parallel with the street, but about twelve feet below its level. There is no railing at the side of the street. A team of horses became frightened at a passing engine, ran over this unguarded side, and the driver was seriously injured. *Held*, that the direct cause of the injury, was the want of a proper barrier at the side of the street, and that under the circumstances, the question of the negligence of the town authorities was properly left to the jury.

March 12th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Luzerne county*: Of July Term 1878, No. 70.

Case by Hugh Hart against the Borough of Pittston, to recover damages for injuries to the plaintiff's son and a team of horses, resulting from an accident alleged to have been caused by the negligence of defendant, in not constructing a railing along a dangerous portion of a street in said borough. The material facts are stated in the opinion of this court.

At the trial, before Handley, J., the defendant submitted the following points:

1. That the borough of Pittston is not responsible for an accident caused by a runaway team of horses in its streets, such as the accident for which plaintiff claims damages.

Ans. "Refused."

2. That the borough of Pittston is not bound to erect, at the point of the accident, a railing or barrier strong enough to stop a running team of horses, if she is bound to erect any railing or barrier at all.

Ans. "This point we cannot affirm. It was the duty of the borough of Pittston, through her proper officers, to keep the approaches to this wall so guarded as to protect travellers. A highway must be kept in such order that even 'skittish' animals may be employed without risk of danger."

In the general charge, the court, inter alia, said:

"Now, it is safe to say to you that if there had been a fence or a barrier placed upon the top of this wall, and young Hart was driving along this street in the borough, and this engine came along, in the manner testified to by the witness, he would, bearing in mind the condition of this place, have had more control over his team, and would have felt much safer in handling the team than he did, knowing that there was no guard whatever upon this wall. It

was very natural for him, the moment he discovered there was danger, instead of attempting to take care of his team and his wagon, to take care of his own life. Whereas, if the road there had such a guard as the law requires, then of course he might, under the circumstances, have controlled his team and prevented them from passing over the wall."

The verdict was for plaintiff for $237.

Defendant assigned for error the answers to the above points and the foregoing portion of the charge.

*C. S. Stark*, for plaintiff in error.—The borough is not liable for accidents caused by horses that have broken away from or are not under the control of their driver: Titus *v.* Northbridge, 97 Mass. 258; Fogg *v.* Nahant, 98 Id. 578; Moulton *v.* Sanford, 51 Me. 127; Babson *v.* Rockport, 101 Mass. 93.

The fright and running of the horses were the proximate cause of the accident; the condition of the highway was the remote cause. The borough is not, therefore, liable: Penn. Railroad Co. *v.* Kerr, 12 P. F. Smith 353.

The jury were instructed that Hart could have controlled his horses and prevented the accident, if there had been a barrier on the wall. After such a charge, it only remained for the jury to find the amount of damages.

*S. J. Strauss* and *H. W. Palmer*, for defendants in error.— Travellers have a right to the whole width of a road as laid out, and if unlawful obstructions or pitfalls are allowed to remain on the margin, the road is not safe and convenient, as required by law: Stinson *v.* The City of Gardiner, 42 Me. 248; Johnson *v.* White-field, 18 Id. 286; Sherman & Redf. on Negligence, § 383; Bryant *v.* Biddeford, 39 Me. 194.

Where a rail or barrier is necessary for the proper security of travellers on the road, which, from its nature, would be otherwise unsafe, and the maintenance of which would have prevented the injury, it is negligence not to construct and properly maintain such barrier: Lower Macungie *v.* Merkhoffer, 21 P. F. Smith 286; Newlin Township *v.* Davis, 27 Id. 317; Scranton City *v.* Dean, 2 W. N. C. 467; Sherman & Redf. on Negligence, § 391; Alger *v.* Lowell, 3 Allen (Mass.) 402; Hey *v.* Philadelphia, 31 P. F. Smith 44; Wharton on Negligence, § 968.

Mr. Justice GORDON delivered the opinion of the court, May 7th 1879.

The verdict and evidence in this case establish the following facts: Pittston is a large borough, having a population of some eight or ten thousand. The street upon which this runaway happened, is the main one of the town, and whilst its general width is

some sixty-six feet, it narrows to a width of thirty-six feet, including the sidewalk, at the place of the accident. On the west side, and at the point mentioned, some twelve feet lower than the street, is the Lehigh Valley Railroad, from the track of which up to a level with said street, is a perpendicular stone wall, built, no doubt, for the protection of the railroad. Notwithstanding the circumstances as above narrated made this a notoriously dangerous place, yet this part of the street was protected by neither fence, guard-wall or curb. On the 7th of May 1875, the plaintiff's two-horse team, in charge of his son, a boy of eighteen years of age, was quietly, and under full control of the driver, passing along the way above described, when the horses took fright from an approaching locomotive, which, as the boy said, by reason of the curve in the road, seemed to be coming down the street, and, in spite of the efforts of the driver, rushed across the road and over the wall above described. The result was one horse killed, the other hurt, the wagon and harness broken, and the boy badly injured.

Complaint is made that the court below suffered the jury to pass upon the question, whether the borough officers were negligent in permitting this precipice to remain unfenced, and whether the plaintiff's loss resulted from that neglect. But we do not see how the court could have refused so to do. The accident happened directly from the want of a barrier between the street and the cut. The driver was not in fault; he managed his team as well as he could under the circumstances, but he had so little of either time or space in which to control and quiet his horses that his efforts were unavailing. It is true that without the frightening of the horses, there would have been no accident; but the horse is naturally a timid animal, and is so liable to fright that those having charge of the public highways ought to make reasonable provision for a matter so common and so likely to happen at any time. Horses abound, but horses that never frighten, or are never fractious, are exceedingly rare, and if roads were to be constructed only for such animals, there must needs be but little travelling upon them. We think it was well said in the case of Lower Macungie Township v. Merkhoffer, 21 P. F. Smith 276, that it was no defence that by careful driving the accident might have been avoided, since that would fall far short of the purpose of a public highway. In the case of Newlin Township v. Davis, 27 P. F. Smith 317, the accident occurred through the fright of a horse upon a bridge, unprotected by side railings; but it was not, in that case, pretended that the omission of such railing was not *per se* neglect, or that the fright of the horse relieved the township of liability. Now, it is hard to understand why a precipice at the side of a narrow street, does not require fencing quite as much as the sides of a bridge. Such in fact is the very point in Macungie v. Merkhoffer, for there it was held, that the township was bound to fill up, or fence off, a

[Borough of Pittston *v.* Hart.]

dangerous excavation at the side of a public road.   We can readily understand and excuse the want of precautions of this kind in wild and sparsely-settled portions of the state, for the finances of the townships are exhausted in the making of roads even of an inferior character; but we can neither understand nor excuse the motive of a borough of ten thousand inhabitants, in refusing to properly guard a place on its main thoroughfare, so dangerous as that now under consideration, especially when the expense of so doing would be but trifling.   In Hey *v.* Philadelphia City, 31 P. F. Smith 44, we have a much stronger case for the defence than the one in hand, for there the roadway was of good width and at least partially protected by the sidewalk and curb; besides this, the driver had left his seat by jumping from the buggy—the horse had torn away from him, and it was whilst in its undirected flight that it went over the river bank.   Here, on the other hand, we have not only the proximity of the railroad, but a very narrow and wholly unprotected street, and we have also the driver maintaining his seat and endeavoring to guide his team to the very last moment.   There is certainly, then, but little, if any, doubt but that the negligence of the borough authorities was the direct cause of the accident complained of, with its resulting damages.

Judgment affirmed.