Richard G. Trexler *v.* Greenwich Township, Appellant.

*Negligence—Townships—Dangerous road—Horses.*

In an action to recover damages for personal injuries, it appeared that plaintiff was injured by falling with his team and wagon down a declivity extending seventy feet at the side of a public road eleven feet wide, on the other side of which there was an embankment. The descent for the first ten feet was vertical, and for the rest of the way it was so steep that the plaintiff and his horses rolled down it fifty feet until their motion was arrested by a stump. There was no guard rail or barrier of any kind at this point. The case was submitted to the jury with instructions that if the road was dangerous by reason of its proximity to a precipice it was the duty of the township to exercise common prudence to insure the safety of travelers, and to erect barriers if they were necessary for that purpose. *Held*, that a judgment on a verdict should be sustained.

The question of safety relates not only to the tendency of the horse to become frightened, but also to the facility with which he can be controlled, and it is too broad a statement to say that country roads must be so kept that " skittish " horses may be driven upon them with safety. There is no duty whatever to provide for the use of vicious, untrained or unmanageable horses, and whoever drives such horses upon the road does so at his peril. Per FELL, J.

Argued March 5, 1895. Appeal, No. 176, Jan. T., 1895, by defendant, from judgment of C. P. Berks Co., Feb. T., 1894,

No. 12, on verdict for plaintiff.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Trespass for personal injuries.   Before ERMENTROUT, P. J.

At the trial it appeared that plaintiff was injured by falling with his team and wagon down a steep declivity at the side of a public road.   The testimony showed that the road at the point where the accident occurred was only eleven feet wide, with a high bank on one side, and a declivity of seventy feet on the other.   The descent for the first ten feet was vertical, and for the rest of the way it was so steep that the plaintiff and his horses rolled down it fifty feet until their motion was arrested by a stump.   There was no guard rail or barrier of any kind at this point.

The court charged in part as follows:

" [Citizens are permitted to drive even skittish animals along the highway.   Our Supreme Court, in discussing this particular matter, say that the horse is naturally a timid animal, and is so liable to fright that those having charge of the public highways ought to make reasonable provision for a matter so common and so likely to happen at any time.   Horses abound, but horses that never frighten or are never fractious are exceedingly rare.   If roads were to be constructed only for such animals there must needs be but little traveling upon them. I have, therefore, affirmed the point that 'a highway must be kept in such repair that skittish animals may be employed · without risk.' ] [5]

" [If, under all these instructions, the jury find that the supervisors were guilty of negligence, that they did not do their duty, that they did not do what was reasonable and practicable to guard against danger by the erection of barriers, and that the accident resulted directly from such negligence, then the next question will be, Did the plaintiff, in any way, help to bring about this accident?   Did he contribute to it?] [2] . . .

" [If you find the township guilty of negligence whereby the accident happened, and that the plaintiff did not contribute by his own negligence to bring it about, then you will find a verdict for the plaintiff, and you will assess the damages in accordance with the rules I have laid down.   If you find that the township was negligent, and that the plaintiff did contrib-

ute to bring about the accident, then you will find a verdict for the defendant. But if, under all the circumstances, you find that that road was so dangerous by reason of its proximity to this precipice that common prudence required extra precaution in order to insure safety to the traveling public, and that the proper precaution was not taken, and that barriers ought to have been there to prevent the tumbling down of these horses, and if you further find that the plaintiff did not contribute to bring about the accident, then you will return a verdict for the plaintiff and assess the damages in the way I have indicated.] " [3]

Plaintiff's points were, among others, as follows:

" 2. If the jury believe that the immediately producing cause of the accident in this case was the unguarded condition of the roadside at the place where the accident occurred, and if that unguarded condition of the roadside was an act of negligence on the part of the township, it follows that the township is responsible in damages to the plaintiff. *Answer :* This point we affirm, provided there is no contributory negligence ascertained by the jury to have existed on part of the plaintiff." [1]

" 3. A highway must be kept in such repair that skittish animals may be employed without risk. *Answer :* This point we affirm." [4]

Defendant's point, among others, was as follows:

" 4. If the jury find that the plaintiff has been guilty of any contributory negligence, notwithstanding that there were no guard rails along the place where the accident happened, he cannot recover and the verdict must be for the defendant. *Answer :* This point we will affirm if the jury find that the acts complained of were negligent, and if the jury further find that, under all the facts of the case, the plaintiff was bound to use such instrumentalities as are therein mentioned as proper, safe and expedient under all the circumstances." [6]

Verdict and judgment for plaintiff for $400. Defendant appealed.

*Errors assigned* were, (1–6) above instructions, quoting them.

*D. Nicholas Schaeffer*, for appellant.—If it was the negligence of the defendant in not permitting guard rails along the road:

side, the instruction given to the jury by the court below was correct. But if it was the fright of the two-year-old horse and its uncontrollable condition that caused the accident, the defendant is not liable for the injury, and the court's instruction was error : Wharton on Negligence, ed. 1874, sec. 103 Hoag & Alger v. Lake Shore R. R., 85 Pa. 293 ; West Mahanoy Twp. v. Watson, 116 Pa. 344 ; Lancaster v. Kissinger, 1 Penny. 250 ; Pittsburg South. R. R. v. Taylor, 104 Pa. 306 ; Bishop v. Schuylkill Twp., 20 W. N. C. 105 ; Chartiers Twp. v. Phillips, 122 Pa. 601 ; Worrilow v. Upper Chichester Twp., 149 Pa. 40 ; Schaeffer v. Jackson Twp., 150 Pa. 145 ; Moulton v. Inhabitants of Sanford, 51 Me. 127 ; Perkins v. Fayette, 68 Me. 152 ; Heald v. Lang, 98 Mass. 581.

A person who knows a defect in a highway and voluntarily undertakes to test it, when it could be avoided, cannot recover against the municipal authorities for losses incurred through such defect : Forks Twp. v. King, 84 Pa. 230 ; Crescent Twp. v. Anderson, 114 Pa. 643 ; Scranton v. Hill, 102 Pa. 378 ; Hill v. Tionesta, 146 Pa. 11 ; Gregory v. Inhabitants of Adams, 14 Gray, 242.

*John H. Rothermel,* of *Rothermel Bros.*, for appellee.—The case was for the jury : Milwaukee etc. R. R. v. Kellogg, 94 U. S. 469 ; Penna. R. R. v. Kerr, 62 Pa. 353 ; Am. & Eng. Ency. of Law, vol. 16, p. 436.

It was the duty of the township to keep all places of manifest danger properly guarded, and to maintain the roads in a reasonably safe condition, and the measure of this duty must be determined by the circumstances of the particular case : Finnegan v. Twp., 163 Pa. 138.

Opinion by Mr. Justice Fell, May 20, 1895 :

The plaintiff was injured by falling with his team and wagon down a steep declivity at the side of a public road. At the place of the accident the road was only eleven feet wide. On one side there was an embankment, and on the other the declivity extended some seventy feet to a stream. The descent for the first ten feet was vertical, and for the rest of the way it was so steep that the plaintiff and his horses rolled down it fifty feet until their motion was arrested by a stump. There was no guard rail or barrier of any kind at this point.

The case was submitted to the jury with instructions that if the road was dangerous by reason of its proximity to a precipice it was the duty of the township to exercise common prudence to insure the safety of travelers, and to erect barriers if they were necessary for that purpose. This was the real point of the case, and the instructions were correct and adequate. The fourth and fifth assignments relate to the statement that " a highway must be kept in such repair that skittish animals can be employed without risk." These words are almost identical with those found in the opinion in Macungie Township v. Merkhoffer, 71 Pa. 276. They appear in the syllabus but not in the opinion in Borough of Pittstown v. Hart, 89 Pa. 389. They were essential to the decision of neither case, and apply to no question which necessarily arose in either. This definition of duty in the maintenance of a country road is probably broader than was intended, and if it is left unnoticed it may lead to the establishment of a rule which will impose unreasonable burdens upon townships. It should however be distinctly stated that the learned trial judge followed what appeared to be a binding authority.

Whether a horse which is "skittish" in the sense of being easily frightened can be safely driven on an ordinary road depends mainly upon his disposition and training in other respects. It depends not so much upon his liability to become frightened, which is in a greater or less degree common to all horses, as upon what he is likely to do when frightened. A horse that bolts or turns or backs cannot be safely used on any road. If while easily frightened he is also easily controlled he may be safely driven on any ordinary country road. The question of safety relates not only to the tendency of the horse to become frightened, but also to the facility with which he can be controlled, and it is too broad a statement to say that country roads must be so kept that "skittish" horses may be driven upon them with safety. There is no duty whatever to provide for the use of vicious, untrained or unmanageable horses, and whoever drives such horses upon the road does so at his peril. Gutters provided for drainage, banks and depressions at the sides, and any obstacles outside of the beaten path become in such cases objects of danger, and it is utterly impracticable to guard against them.

There is however a reasonable limit to which protection from injury should extend.  It is common experience that horses neither vicious nor unmanageable are liable to shy, and while they may be readily controlled they cannot be prevented from stepping aside from the beaten path.  This is not ordinarily attended with danger, where the road is of adequate width or where the dangerous places are protected by guards.  Where the road is of the ordinary width the driver is not carried by such a departure to a position of danger before he has an opportunity to control the movements of his horse.  Where however the road is so narrow that a slight deviation leads to the edge of a precipice or other place of danger the duty to erect guards is apparent.  The rule was well stated in Borough of Pittstown v. Hart, supra, where it was said : "The horse is naturally a timid animal, and is so liable to fright that those having charge of the public highways ought to make reasonable provision for a matter so common and so likely to happen at any time."

The duty is to make provision against such dangers as are probable in the use of ordinarily manageable horses, and not in the use of such as are untrained and uncontrollable.  This duty is performed when the roads are maintained in a reasonably safe condition for the ordinary public travel.  The instruction referred to did the defendant no harm in this case.  The place where the accident happened was one of manifest danger, and there is no evidence that the horse was unsafe for use.

The judgment is affirmed.