# Lydia Bitting, Appellant, v. the Township of Maxatawny.

*Negligence—Proximate and remote cause.*

To sustain an action for damages for an injury caused by the alleged negligence of another, the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer, and likely to flow from his act.

*Negligence—Township bridge—Proximate and remote cause—Frightened horse.*

The mere fact that a horse that has passed safely over and a very few feet beyond a dangerous and negligently guarded township bridge, backs on and off it without fault of the driver, does not of itself warrant the court in declaring as matter of law that the negligence of the township was the remote cause of the injury, as the negligence may have been the proximate cause.

In view of the fact that the ordinary horse will at times take fright, and that his movements when frightened are wholly unreasonable and unforeseeable, it is for the jury to determine what provision shall reasonably be made for the safety of travelers on a bridge. The size of the stream bridged, the elevation above the water, the width of the bridge and the surroundings where located are all to be considered in determining whether there was negligence, and whether the consequences of a horse becoming frightened and backing off the bridge might and ought to have been foreseen.

*Highways—Duties of township—Untrained or vicious animals.*

It is the duty of a township to provide a reasonably safe highway for ordinary travel by the ordinary horse, but there is no duty on the township to provide for travel by exceptionally vicious, untrained or unmanageable animals.

*Negligence— Contributory negligence— Bridge — Proximate and remote cause—Propensity of horse to take fright—Question for jury.*

In an action against a township for the death of plaintiff's husband it appeared that on the night of the accident the deceased drove over a township bridge at a trot, holding the reins in his right hand and a lighted lantern in his left hand slightly above the dasher. When the hind wheels of his wagon were about six feet beyond the bridge he extended his left hand with the lantern over the side of the wagon and immediately the horse stopped and backed upon and over the unguarded side of the bridge. The bridge was nineteen feet wide, twenty-six feet long and four feet six inches above the water. It was unprovided with guard rails. There was evidence that the horse had an aggravated propensity to take fright, and that this was known to the deceased. *Held,* that the case was for the jury.

Argued March 4, 1896.   Appeal, No. 250, Jan. T., 1896, by plaintiff, from judgment of C. P. Berks Co., May T., 1895, No. 87, on verdict for defendant.   Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.   Reversed.

Trespass for death of husband.   Before ENDLICH, J.

The facts appear by the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*H. P. Keiser* and *J. H. Jacobs,* for appellant.—The true rule is that the injury must be the natural and probable consequence of the negligence, such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer, and likely to flow from his act: West Mahanoy Twp. v. Watson, 112 Pa. 574; Moulton v. Sandford, 51 Me. 127; Hey v. Phila., 81 Pa. 44; Pittston Borough v. Hart, 89 Pa. 389; Sturgis v. Kountz, 165 Pa. 358; Alger v. Lowell, 3 Allen, 402; Norris v. Litchfield, 35 N. H. 271; Joliet v. Verley, 35 Ill. 58.

*C. H. Ruhl,* of *Ermentrout & Ruhl,* with him *D. Nicholas Schaeffer,* for appellee.—When a horse becomes violently and extraordinarily unmanageable, so as to dash out of the beaten track on the edges of the road, this is one of those extraordinary incidents of travel not in the contemplation of the road builder, and for the consequences of which the township is not responsible: Bishop v. Twp. of Schuylkill, 20 W. N. C. 105; Chartiers Twp. v. Philips, 122 Pa. 601; Moulton v. Sanford, 51 Me. 127; Heald v. Lang, 98 Mass. 581; Perkins v. Fayette, 68 Me. 153; Schaeffer v. Jackson Twp., 150 Pa. 149; Herr v. Lebanon, 149 Pa. 222; Trexler v. Greenwich Twp., 168 Pa. 218; Yoders v. Amwell Twp., 172 Pa. 449.

OPINION BY MR. JUSTICE DEAN, October 5, 1896:

The facts of this case are stated by the learned judge of the court below thus:

" This is a suit by a widow to recover damages for the death

of her husband, alleged to have been caused by the negligence of the defendant.

"Forming part of one of the highways of Maxatawny township, a stone bridge about nineteen feet in width and twenty-six feet in length crosses a mill race sixteen feet wide, the distance between the top of the bridge and the bottom of the stream being four feet six inches. There are no guard rails at the sides of the bridge. On the evening of November 22, 1894, plaintiff's husband drove over the bridge at a trot, holding the reins in the right and a lighted lantern in the left hand slightly above the dasher. When the hind wheels of his wagon were about six feet beyond the bridge, he extended his left hand, with the lantern, over the side of the wagon, and immediately the horse stopped and backed, forcing the wagon back upon the bridge. When in this way the middle of the bridge had been reached, the horse turned, so as to put itself and the team in a position transverse to the length of the bridge, and continuing to back and rear, threw plaintiff's husband, the wagon and itself backwards over the right side of the bridge into the stream. Plaintiff's husband fell under the wagon and the horse and was killed."

On this state of facts, the court below, being of opinion, the proximate cause of the accident was the exceptional and impossible to be foreseen conduct of deceased's horse, and not the absence of suitable guard rails on the bridge, directed a nonsuit, and afterwards refusing to take it off, we have this appeal.

The case was tried before the decision in Yoders v. Amwell Twp., 172 Pa. 447, was handed down, and while the difference in the facts of the two cases may and perhaps ought to make a difference in the event of the issues, the course of the trial must, from the law as laid down in that case, be the same. The rule for determination of whether the alleged negligence of defendant was the proximate or remote cause of the injury in that case, as in all the adjudicated cases, and there are many of them, is the same; whether in the application of the rule to a particular case there be a legal liability must necessarily depend on the facts of that case. This rule is: "The injury must be the natural and probable consequences of the negligence, such a consequence as under the surrounding circumstances of the

case might and ought to have been foreseen by the wrong-doer, and likely to flow from his act.".

The mere facts that a horse has passed safely over and a very few feet beyond, a dangerous and negligently guarded bridge, then, without fault of the driver backs on and off it, do not of themselves warrant the court in declaring, as matter of law, the negligence of defendant was the remote cause of the injury. The negligence may be the proximate cause. Was it such a consequence as under the circumstances ought to have been foreseen and provided against? That the ordinary horse will at times take fright is well known; that his movements when affrighted are wholly unreasonable and unforeseeable is well known. What provision shall reasonably be made for the safety of travelers on the highway, in view of these facts, is for the jury. The size of the stream bridged; the elevation above the water; the width of the bridge; the surroundings where located; these are all to be considered in determining whether there was negligence, and whether the consequence might and ought to have been foreseen.

The mistake made in the argument is, in treating the unexpected movements of the horse when affrighted as something that could not have been foreseen, and therefore something that defendant ought not to be answerable for. But the fright could be foreseen, and that the horse, acting under fright, would jump to one side, back, turn short around, or run away, was also foreseeable; and this is really foreseen by those having in charge the public highways. Who doubts that if this bridge had been twenty feet high instead of four and a half feet there would have been guard rails? Yet so far as jumping over and backing off are concerned there is no more reason why they should be on one than on the other; the consequences of going over would be more serious in the one case than in the other, but the probability of going over would be the same. The authorities, foreseeing that horses may take fright, plunge over or back off the bridge twenty feet high, and knowing that the consequences of a fall from such a height must be disastrous, properly guard against it; but if the consequences of a fall four and a half feet would also probably be serious although in a less degree, the duty is just as plain to guard against them in the one case as the other. All the evidence as to the character of

this structure and its surroundings was for the jury in determining whether it was dangerous by the usual modes of travel, and whether the township ought to have foreseen it was so.

Some parts of plaintiff's evidence tended to show deceased was driving an exceptionally dangerous horse; dangerous because of an aggravated propensity to take fright, and that this was known to the driver; yet, notwithstanding, he undertook to drive him at a rapid gait, on a dark or foggy evening, holding the lines only with one hand, embarrassed in his efforts by a lantern in the other, thus greatly reducing his power to control the horse. If the jury find these to be the facts, clearly, he was guilty of negligence which contributed to the accident; and there being two efficient proximate causes of the accident, one independent of the township and for which it was not answerable and deceased was, there could be no recovery. The duty of the township is to provide a reasonably safe highway for ordinary travel by the ordinary horse, and as was said in Trexler v. Greenwich Township, 168 Pa. 218, there is no duty on the township to provide for travel by exceptionally vicious, untrained and unmanageable animals. No roads, unless there were barriers on each side for the whole length of them, would make travel reasonably safe with such animals. Or if this driver, by a negligent use of his lantern, frightened his own horse, or negligently incumbered himself with the lantern so that he could not control his horse, the township should not be held answerable.

But the case was for the jury, as we have already stated, therefore the judgment is reversed and a procedendo is awarded.