Charles E. Cage v. The Township of Franklin, Appellant.

*Negligence—Defective highway—Liability of township.*

A township is responsible for such consequence of the fault of its officers in the care of its highways as are natural and probable, and might therefore be foreseen by ordinary foresight, but if their fault happen to concur with something extraordinary, and therefore not likely to be foreseen, the township will not be answerable for the extraordinary result.

*Defective highway—Fright of horse—Proximate cause.*

Horses are likely to become frightened and in their sudden fright plunge over an unguarded precipice, or rush upon some danger within the highway for the existence of which the authorities are responsible. In such cases the consequence of the neglect of duty are natural and probable, and ought therefore to be foreseen. But when from extraordinary cause, for the existence of which the supervisors are not responsible and of which they cannot be presumed to have had notice, a driver loses control of his horses and they come in contact with a defect in the highway, there is no more reason for holding the township answerable for a resultant injury

than there is for holding any other party responsible for the concurrence of something which he could not foresee with his negligence.

*Proximate cause—Ordinary or extraordinary causes.*

In the application of legal principles to the facts of particular cases, different results have been reached as to the proximate causes of the injuries under investigation, not so much because of·difference or fluctuation of judicial opinion as to the general doctrine, but because the action, the condition or the cause concurring with the neglect to provide proper barriers, or to keep the highway in proper repair, has in some cases been deemed ordinary and in some cases extraordinary.

It cannot be said to be an inflexible rule of law in Pennsylvania, that, if by reason of fright, irrespective of the cause of it, a horse becomes uncontrollable, and in this condition comes upon a defect in the highway or upon a place which is defective for want of a railing, by which an injury is occasioned, the township is or is not liable.

*Animals—Fright of horse—Defective highway—Proximate cause.*

The tendency of horses to take fright is common, whilst the disposition to balk or back without cause is exceptional. The tendency to balk is not a common trait nor a common habit of the ordinary horse and it is not the law that country roads must be made safe against every possible freak of a horse and that the township is liable for the resultant injury no matter at what distance from the defective place it takes possession of him.

*Defective highway—Balky horse—Proximate cause.*

Where a horse attached to a buggy after crossing a bridge balked, there being nothing at that point to frighten a horse, and no sufficient evidence that the horse was frightened, and backed the buggy across an intervening space of seventy feet, more or less, and over the unguarded wing wall of a bridge, in a suit against the township the jury should be instructed that if they find from the evidence that the proximate cause of the injury was the backing of the plaintiff's horse and that the backing was not caused by any defect in the highway, by any neglect of duty on the part of the road commissioners, then their verdict must be for the defendant.

Argued April 20, 1898.    Reargued April 17, 1899.    Appeal, No. 185, April T., 1898, by defendant, from judgment of C. P. Greene Co., April T., 1896, No. 233, on verdict for plaintiff. Before Rice, P. J., Beaver, Orlady, Smith, W. W. Porter, W. D. Porter and Beeber, JJ.    Reversed.    Opinion by Rice, P. J.    W. W. Porter, J., dissents.

Trespass.    Before Crawford, P. J.

At the preceding argument of this appeal the judgment of the court below was affirmed, as will appear by the report of the case in 8 Pa. Superior Ct. 89, Rice, P. J., and Beaver, J., dissenting.

For statement of facts and arguments of counsel and the assignments of error in full reference may be had to the former report.

The following are assignments of error sustained by the court in the present opinion : (11) In refusing defendant's second point, which point is as follows : " 2. If the jury find from the evidence that the plaintiff's horse, when at a distance of seventy (70) feet or more from the place of the accident, balked and became uncontrollable and backed for a distance of seventy (70) feet before it came to the place of the accident, and if they further find that the horse would not have fallen over the bank or edge of the road but for the balking and backing, then the plaintiff cannot recover, and the verdict of the jury must be for the defendant." (13) In refusing defendant's fourth point, which point is as follows : " 4. If the jury believe from the evidence that had it not been for the balking and backing of the horse, or either of these after the driver had safely passed along and over the highway, at the place where the injury happened, that the accident would not have occurred, then their verdict must be for the defendant." (14) In refusing defendant's fifth point, which point and answer are as follows: " 5. If the jury find from the evidence that the proximate cause of the injury was the backing of the plaintiff's horse, and that the backing was not caused by any defect in the highway, or by any neglect of duty on the part of the road commissioners, then their verdict must be for the defendant. *Answer :* We answer that point in this way. We will submit to you to determine what was the proximate cause of the accident—whether the negligence of the plaintiff here, or conduct of the horse or condition of the bridge there, through the neglect of the township authorities."

*James Inghram*, for appellant.

*R. F. Downey*, for appellee.

OPINION BY RICE, P. J., October 9, 1899 :

The plaintiff, a liveryman in Waynesburg, let a horse and buggy to George Hickey to drive to Brownsville. Before reaching the bridge where the accident happened the horse

threw back his ears, and, without apparent cause, evinced a disposition to balk, but did not come to a standstill at that point. When, however, they reached the bridge he balked and backed the buggy off the bridge and over the embankment at the side of the road. No harm was done. Hickey and his wife then got out of the buggy, and he led the horse across the bridge to a point, according to his testimony, sixty or seventy feet beyond, when the horse again balked, and, backing first in one direction and then in the other, finally, in spite of the efforts of Hickey, backed the buggy across the intervening space and over one of the unguarded wing-walls of the bridge. This action was brought to recover the damages to the horse and buggy.

The main question in the case is raised by the refusal of the defendant's points, the second of which (eleventh assignment) was as follows:

" If the jury find from the evidence that the plaintiff's horse, when at a distance of seventy (70) feet or more from the place of the accident, balked and became uncontrollable, and backed for a distance of seventy (70) feet before it came to the place of the accident, and if they further find that the horse would not have fallen over the bank or edge of the road but for the balking and backing, then the plaintiff cannot recover and the verdict of the jury must be for the defendant."

The fourth point was very much the same except that the question whether the point of danger had been " safely " passed, was left to the jury.

In the consideration of the question raised by these assignments of error it is to be observed that, for aught that appears in the testimony, the highway at the point where Hickey says the horse balked the second time and commenced to back was free from defect; that there is no sufficient evidence that, at the time of the accident (however it may have been years before) there was anything at that point to frighten a horse, or that the horse balked and backed because it was frightened; and finally, that the horse had manifested a disposition to balk and had actually balked before the place of danger was reached. In making the foregoing summary of the evidence we have not overlooked the testimony of B. H. Clark, but it will be seen upon careful examination that it relates to a condition many years

before, and is not in conflict with the testimony of Mrs. Hickey, Thos. J. Penn, James Carr, Warren Mankey and Dr. Ratcliff, all of whom were called by the plaintiff, and all of whom testified in effect that they had noticed nothing at the point where the horse began to balk the second time to frighten a horse. The defendant's point above quoted is to be considered, and its correctness determined, not as an abstract legal proposition merely, but is to be viewed in the light of the facts last referred to, all of which appear in the evidence adduced by the plaintiff.

It is urged that there is no positive evidence that the horse was in the habit of balking, or had ever balked on any previous occasion. It might be surmised, from his actions on this occasion, that this was not his first manifestation of that vicious disposition. It has been held that the fact that a horse on trial three or four days after purchase proved to be balky is evidence that he was balky at the time of purchase: Finley v. Quirk, 9 Minn. 194. Let it be granted, however, that the horse in question had never balked before, how does that affect the question? Not at all favorably to the plaintiff's contention that it was a danger to ordinary travel which the township authorities ought to have provided against. If this was the first outbreak of a disposition to balk in a horse over nine years old, it was all the more extraordinary and less likely to have been foreseen by those having the care of the highway. But not to press this consideration the fact remains, if the greatly preponderating evidence is to be credited, that his backing was the unreasoning, perverse and vicious action of a balking horse, and so far as the duty of the township to provide against it is concerned, it cannot, in our judgment, make any difference whether it was his first or fiftieth manifestation of that vicious and exceptional disposition. It might make a difference if the case turned upon the question of the plaintiff's contributory negligence.

Was the danger that a horse properly driven or led, would, without cause, except a vicious disposition, balk at a point sixty or seventy feet beyond the unguarded place, back across the intervening space, and finally precipitate himself and wagon over the wing-wall of the bridge, one that the township authorities ought reasonably to have foreseen and provided against? There

is some discrepancy between the testimony of Mr. and Mrs. Hickey as to the point where the horse balked the second time and began to back, and we state that part of the question as it is presented by the defendant's testimony and in the point. It is well settled that a township is responsible for such consequences of the fault of its officers in the care of the highways as are natural and probable, and might therefore be foreseen by ordinary foresight, but if their fault happen to concur with something extraordinary, and therefore not likely to be foreseen, the township will not be answerable for the extraordinary result.

As illustrations of the latter proposition we refer to Chartiers v. Phillips, 122 Pa. 601, Herr v. Lebanon, 149 Pa. 222, Schaeffer v. Jackson, 150 Pa. 145, Kieffer v. Hummelstown, 151 Pa. 304, Willis v. Armstrong, 183 Pa. 184, Card v. Columbia, 191 Pa. 254, Heister v. Fawn, 189 Pa. 253, and Habecker v. Lancaster, 9 Pa. Superior Ct. 553. As illustrations of the former proposition, Trexler v. Greenwich, 168 Pa. 214, Closser v. Washington, 11 Pa. Superior Ct. 112, and cases there cited, Yoders v. Amwell, 172 Pa. 447, Kitchen v. Union, 171 Pa. 145, the very recent decisions in Ide v. Lake, 191 Pa. 182, and Boone v. East Norwegian, 192 Pa. 206, may be referred to.

" The concurrence of that which is ordinary with a party's negligence does not relieve him from responsibility for the resultant injury. Examples of such concurrence may be found in cases where by reason of causes known to the public authorities, horses are likely to become frightened, and in their sudden fright plunge over an unguarded precipice, or rush upon some danger within the highway for the existence of which the authorities are responsible. In such cases the consequences of the neglect of duty are natural and probable, and ought therefore to be foreseen. But when from extraordinary cause, for the existence of which the supervisors are not responsible, and of which they cannot be presumed to have had notice, a driver loses control of his horses and they come in contact with a defect in a highway, there is no more reason for holding the township answerable for a resultant injury than there is for holding any other party responsible for the concurrence of something which he could not foresee with his negligence : " Schaeffer v. Jackson, 150 Pa. 145.

In the application of these principles to the facts of particu-

lar cases, different results have been reached as to the proximate causes of the injuries under investigation, not so much because of difference or fluctuation of judicial opinion as to the general doctrine above stated, but because the action, the condition or the cause concurring with the neglect to provide proper barriers, or to keep the highway in proper repair, has in some cases been deemed ordinary and in other cases extraordinary. For example, when the horse, by reason of fright from an extraordinary cause not reasonably to be foreseen, became uncontrollable, turned suddenly around wrenching the spokes of one of the front wheels out of the hub, and fled in the opposite direction until a hole in the highway was reached, into which the axle dropped, and the occupants of the wagon were in consequence thrown out and injured, it was held that the proximate cause of the injury was the fright of the horse, and that the township was not liable : Schaeffer v. Jackson, supra.   On the other hand where the horse became frightened at a point in the highway which natural objects made "scary," as one of the witnesses described it, and backed fourteen feet on to a narrow bridge and then off the side which was unguarded, it was held that "the dominant cause here was a bridge negligently dangerous to the ordinary horse at all times when he displays one of his common characteristics," and, therefore, that it was error to charge the jury that the proximate cause of the injury was the unruly conduct of the horse : Yoders v. Amwell Township, 172 Pa. 447.   These two cases, taken for illustration, are similar in that in each the defective place in the highway had been passed and the action of the horse was due to sudden fright. Unless we assume, therefore, that Schaeffer v. Jackson and the cases belonging to its class have been overruled by Yoders v. Amwell, it cannot be said to be an inflexible rule of law in Pennsylvania that, if by reason of fright, irrespective of the cause of it, a horse becomes uncontrollable, and in this condition comes upon a defect in the highway or upon a place which is defective for want of a railing, by which an injury is occasioned, the township is or is not liable.

Upon what ground, then, are the two cases distinguishable? Not solely upon the ground that in one case the frightened horse backed into the defective place and in the other turned and ran into it.   As is well shown in the later case no one can

foretell the action of a frightened horse, and it is not upon the ground that, in one case, the particular action of the horse was reasonably to have been foreseen and in the other case was not. The tenable ground upon which the cases are distinguishable is that, in the circumstances of one case, the fright of an ordinary horse was something that might have been foreseen, whilst in the other case it was not reasonably to be foreseen that a horse would become frightened at the point where it turned, and that the driver would not regain control before the defective place in the highway was reached.

But granting, for the sake of the argument only, that the Supreme Court intended to lay down a general and unqualified rule in the later case, namely, that where the action of an ordinary horse, caused by sudden fright, concurs with the negligence of the township, the latter is the dominating and controlling cause of the resultant injury, and the former is a mere incident, does it follow that the same rule applies to a case like the present? We think not. The rule as stated certainly does not apply in terms; it relates to the action of a frightened horse, not to the action of a balky horse. Nor does it apply in principle, as is well shown in the reasoning upon which the judgment in Yoders v. Amwell was based. "Of all our domestic animals," says Justice Dean, "the horse is probably the most intelligent, yet among all of them, he is most subject to fright." Again he says: "It is the habit of the horse, not his particular movement in the exercise of it, which last is beyond human foresight, that defendant ought to have known and provided against." Again in stating the premises upon which the conclusion was based, he says: "The fright of the horse was ordinary, and to be expected; . . . . the township authorities should have guarded against that which was to be expected." Further on in the opinion, fright is spoken of as "an outbreak of the habit of the average horse," and again as "one of his common characteristics." The idea kept prominently in view throughout the whole opinion was thus expressed in Pittston v. Hart, 89 Pa. 389: "The horse is naturally a timid animal, and is so liable to take fright that those having charge of the public highways ought to make reasonable provision for a matter so common and so likely to happen at any time." The same idea was made prominent in Trexler v. Greenwich, 168 Pa.

214, Bitting v. Maxatawny, 177 Pa. 213, and our own case
of Closser v. Washington, 11 Pa. Superior Ct. 112. " In de-
termining whether a conclusion of law in any adjudicated case
is a precedent in a subsequent one, the value of the first, usually,
is measured by its similarity or dissimilarity to the second in
its controlling facts : " Yoders v. Amwell, supra. As we have
already pointed out there is no express evidence that the action
of the horse in question was attributable to fright. Neither of
the occupants of the buggy on that day, one called by the plain-
tiff and the other by the defendant, testified to that effect. On
the contrary both testified that they saw nothing to frighten
him. We quote from the testimony of the plaintiff's witness :
" He just put his ears back and he backed the buggy off the
bridge. I did not see anything to scare the horse. I was tak-
ing particular notice and did not see anything to frighten the
horse at that time at all." When the witnesses say that the
horse " balked " it is fairly to be inferred from their testimony
taken as a whole that they used that term in its ordinary and
well understood sense and not with the meaning that the horse
suddenly stopped from fright. In view of this fact, and the
further fact that the place of danger had been safely passed,
both of which facts are, to say the least, fully warranted by the
testimony, it seems to us that it would be pressing the decision
in Yoders v. Amwell beyond legitimate bounds to say that it
is a precedent which rules the present case. In that case the
action of the horse was attributable to fright, which in the cir-
cumstances was ordinary and to be expected, while in the pres-
ent case that fact is absent. Moreover, in that case the point
in the highway at which fright took possession of the horse was
in such close proximity to the unguarded place that the likeli-
hood of the driver being unable to bring him under control
might reasonably have been foreseen. This distinction between
the two cases is not without the warrant of authority, as an ex-
amination of the opinion of Justice FELL in Trexler v. Green-
wich, 168 Pa. 214, will show. See also Heister v. Fawn, 189
Pa. 253.

Tendency to take fright is common, whilst the disposition to
balk and back without cause is exceptional. Whether it pro-
ceeds from inherent badness of nature from bad breaking when
a colt, or from bad treatment afterwards, it is a vice. It is not

a common trait nor a common habit of the ordinary horse, and we do not understand it to be the law that the country roads must be made safe against every possible freak of a horse, and that the township is liable for the resultant injury, no matter at what distance from the defective place it takes possession of him. "The township cannot be held guilty of negligence for failure to anticipate and provide against a result of fright which could only be suggested as a remote possibility:" Dixon v. Butler, 4 Pa. Superior Ct. 333. "The duty of the township is to provide a reasonably safe highway for ordinary travel by the ordinary horse, and as was said in Trexler v. Greenwich, 168 Pa. 214, there is no duty on the township to provide for travel by exceptionally vicious, untrained and unmanageable animals. No roads, unless there were barriers on each side for the whole length of them, would make travel reasonably safe with such animals:" Bitting v. Maxatawney, 177 Pa. 213. A township or other municipal corporation is under no obligation to provide for everything that "may" happen upon them, but only for such things as ordinarily exist or such as may reasonably be expected to occur: 2 Dill. Mun. Corp. 1015.

Upon full reconsideration of the case after a reargument, the majority of the court are of opinion that the jury ought to have been instructed that if they found the facts upon which the defendant's second and fourth points were predicated, then, in view of the other undisputed facts of the case, the plaintiff could not recover. The answer to the defendant's fifth point may have been intended as an affirmance, but it was so worded as not to impress the jury with the correctness of the legal proposition. In any view of the case, even in that taken by the plaintiff, the defendant was entitled to an unqualified, unambiguous and emphatic affirmance of the point.

The order heretofore made affirming the judgment is reconsidered and rescinded, the eleventh, thirteenth and fourteenth assignments are sustained, and the judgment is reversed with a new venire.

WILLIAM W. PORTER, J., dissenting:

I dissent because nothing has been brought to my attention which changes the view of this case expressed by me in an opinion heretofore filed and reported, 8 Pa. Superior Ct. 89.