## Goldstein *v.* East Fallowfield Township, Appellant (No. 1).

*Negligence—Damages—Evidence of physician.*

1. Where a physician has observed in his treatment and examination the condition of a plaintiff in an accident case, he may testify as to the probabilities of such a condition continuing.

*Negligence—Townships—Dangerous road—Absence of guard rail.*

2. Where an ordinarily safe and tractable horse takes fright apparently at a large piece of roof tin painted red lying either on the roadbed or near it, and immediately backs over an unguarded precipice at the side of the road, the question of the negligence of the township in which the road is situated is for the jury. In such a case it is also for the jury to say whether the presence of the tin where and as it was, was or was not in character an unusual incident to travel upon the public highway.

*Trial—Evidence—After-discovered evidence—Discretion of court.*

3. The appellate court will not reverse a judgment because the lower court refused a new trial asked for on the ground of after-discovered evidence, where it appears that the lower court properly found that due diligence upon the part of the defendant would have discovered the evidence before the trial, and that the evidence itself would not legitimately require or even probably procure a different verdict.

Argued Nov. 17, 1909. Appeal, No. 183, Oct. T., 1909, by defendant, from judgment of C. P. Chester Co., April T., 1909, No. 27, on verdict for plaintiff in case of Esther Goldstein v. East Fallowfield Township. Before Rice, P. J., Henderson, Morrison, Head, Beaver and Porter, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Butler, J.

The opinion of the Superior Court states the case.

At the trial Dr. D. P. Rettew was asked this question:

"Q. You have heard Abraham Goldstein describe the accident that he suffered there on the road on the 12th of October, 1907, when he and his daughter went down over this embankment into the Brandywine, and he has detailed to you the circumstances of that fall. Now, from your observation of the daughter the day following the accident, from the manner that she acted, and the way she complained to you, from that time on down to the present, and from the examinations that you have made, the observations that you have made from time to time, and the examination you have made a week ago, you say the girl is suffering from inflammation of the hip, is that it? A. Yes. Q. Can you tell whether or not that is the result of the accident which the girl suffered?"

Objected to.

The Court: Ask him whether this condition is consistent with the accident in which the girl had a fall and struck those parts?

"A. It is."

Mr. Hause: I desire to object to that.

160 GOLDSTEIN *v.* E. FALLOWFIELD, Appellant (NO. 1).

Statement of Facts—Assignment of Errors.   [43 Pa. Superior Ct.

The Court: The objection is overruled.   To which ruling counsel for defendant excepts and prays the court to seal a bill of exceptions thereto, which is done accordingly.

Mr. Sproat: "Q. Your answer is that it is?"

The Court: "Q. It. is consistent with violence to that part?   A. Yes."

Mr. Sproat: "Q. What are the prospects of this girl's becoming cured or becoming better or becoming worse?"

Objected to on the same ground.

The Court: ".Q. Taking her condition just as it is and as you have observed it, what are the prospects of her getting better or worse?"

Mr. Hause: I object to that.   I do not think he can be asked a hypothetical question on a condition of affairs that he has not described himself or anybody else has described.

Objection overruled.   To which ruling counsel for defendant excepts and prays the court to seal a bill of exceptions thereto, which is done accordingly. [1]

The Court: The question is, taking her present condition as he has observed it.

Mr. Sproat: "Q. What are the prospects of this young girl's recovering, if any?   A. I would say there are no prospects of a complete recovery."

The court charged in part as follows:

I repeat, if the horse frightened at the tin and went over the declivity because of the absence of a guard rail, the absence of the guard rail was the efficient, immediate cause of the accident, and the presence of the tin, if the tin, where and as it was, was in character a not unusual incident to travel upon the public highway.

Verdict and judgment for Esther Goldstein for $1,000 and for Abraham Goldstein for $650.50.

*Errors assigned* were (1) ruling on evidence; (2) portion of charge as above, quoting it, and (3) refusal of new trial.

*J. Frank E. Hause,* for appellant, cited: Vallo v. Express Co., 147 Pa. 404; Schaeffer v. Jackson Twp., 150 Pa. 145; Herr v. Lebanon, 149 Pa. 222; Kieffer v. Hummelstown Boro., 151 Pa. 304; Trout v. Waynesburg, etc., Turnpike Road, 216 Pa. 119; Quinn v. Phila., 224 Pa. 176.

*Granville L. Rettew,* with him *Harris L. Sproat,* for appellee, cited: Davis v. Snyder Twp., 196 Pa. 273; Hey v. Phila., 81 Pa. 44; Pittston Boro. v. Hart, 89 Pa. 389; Scott Twp. v. Montgomery, 95 Pa. 444; Burrell Boro. v. Uncapher, 117 Pa. 353; Sturgis v. Kountz, 165 Pa. 358; Yoders v. Amwell Twp., 172 Pa. 447; Bitting v. Maxatawny Twp., 177 Pa. 213; Boone v. Twp. of East Norwegian, 192 Pa. 206; Curry v. Luzerne Boro., 24 Pa. Superior Ct. 514.

OPINION BY RICE, P. J., July 20, 1910:

In order to give a correct understanding of the question raised by the first assignment of error, it should be stated that the witness, Doctor Rettew, had previously testified in the case that he was called to attend the plaintiff and her father, Abraham Goldstein on October 12, 1907, which was the date of the accident; that the plaintiff complained of pains in her back and limbs; that he visited her at frequent intervals; that within two weeks she complained of pain in her hip; that he directed a continuation of the applications he had first ordered, and advised that she be not allowed to do much walking and that she be taken from school; that a week before the trial he made an examination in which he found that there was an enlargement and thickening over the hip joint and some shortening of the right leg; that the medical term for her condition was "coxitis," inflammation of the hip joint. In the course of his examination the court asked a question relative to the cause of the condition, to which counsel for the defendant objected upon the ground that there was no testimony by the doctor or anybody else on which to base it. The court then said: "The witness has been called out of order and I was putting the question to the witness as a hypothetical one,

VOL. XLIII—11

assuming that she had a fall, and if they do not prove that she had a fall it goes for nothing. But I think you had better withdraw this witness and call him after the other witnesses have laid proper ground. The doctor has described the condition of the girl and an inflammatory condition of the hip which he says, in his judgment, has arisen from outside violence, and unless the plaintiff shows that this little girl was subjected to outside violence at that point the doctor's testimony goes for nothing." To this the counsel for the defendant suggested that that was throwing open wide the door. Whereupon counsel for plaintiff said: "May we have the doctor's testimony stricken out at this time?" To this counsel for defendant said, "I have not objected to any part of his testimony except that based upon the hypothetical question." Thereupon the court said, "We will consider it stricken out so far as the little girl is concerned." The witness was then withdrawn, and, after the accident had been described by Abraham Goldstein, the doctor was recalled, and what took place is fully set forth in the assignment of error. The evident purpose of the first question put on his re-examination was to summarize the essential features of the testimony he had previously given, without taking up time in repeating it in detail. No objection was made to that question. Then followed the question which was objected to. It is spoken of in the objection as a hypothetical question, but we do not understand it in that way. It was a a question seeking to bring out the professional opinion of the physician who had attended the child and knew her condition, upon the prospects of her recovery from the condition he had observed. Thus understood we can see no valid ground for holding that the question was incompetent. Whether that condition resulted from the injuries that she had received in the accident was another question. Whatever testimony the witness gave upon that subject is not complained of in this assignment of error. The witness had observed in his treatment and examination of the child certain conditions; he was competent by reason of his experience to testify upon the probabilities of those conditions continuing. The first assignment is overruled.

At the point where the accident took place the roadbed was sixteen feet wide from the edge of the sloping bank on one side to the edge of the nearly perpendicular declivity on the other to Brandywine creek. The distance from the top of the latter to the water of the creek was about fifteen feet. According to the testimony of Abraham Goldstein, he was driving a single horse and market wagon and had his child, the plaintiff, on the wagon with him, and when he came to that place the horse became frightened and started to back; whereupon he jumped from the wagon seat, seized the horse by the bridle, but was unable to prevent him from backing the wagon over the bank. To quote his language: "I was driving a single team and had mine child on the wagon with me and when I came to that place where the accident was the horse got scared and started to back and I jumped down from the wagon and took him from the bridle, but I did not have a chance to. I jumped down from the seat and took the horse by the bridle, but I did not have the chance in a minute I shall be able to turn him around and the hind wheels went over the back and the horse after it and I after the horse, and mine child was on the seat and she went under the wagon and the boxes on her." It is an undisputed fact that there was no guard rail at this place and had been none for a long period of time. The testimony was undisputed that the horse was eight years old, safe, and had not been known to take fright before. There was evidence that a piece of roof tin, about five feet long and painted red, lay either on the roadbed or near to it, and Goldstein inferred that it was that piece of tin that frightened the horse. The weight of the testimony tends to show that the tin was lying partly on the roadway and partly on the embankment. But it is argued that a jury would have been warranted in finding that it was not within the limits of the road but was upon the embankment; and the question is whether the township could be held liable if the jury found the latter to be the fact. In the determination of this question it must be conceded that the evidence would not sustain a finding that the township was responsible for the piece of tin being at the place it was. But it is contended by the plaintiff that the township was negligent

in not guarding the dangerous precipice on the east side of the highway at this point and its negligence in that respect was the real, efficient and proximate cause of the accident. It would serve no good purpose to review all the cases wherein the fright of horses has entered into the question of the liability of municipalities and townships for injuries occasioned by going over unguarded embankments along public highways. A leading case upon the subject is Yoders v. Amwell Township, 172 Pa. 447, and the doctrine of that case would fully sustain a finding that the failure to place a guard rail at such a point as is described in the testimony in this case was negligence and was the proximate cause of the injury, and not the fright of the horse, even though the object at which the horse took fright was not within the limits of the road. In that case, Justice DEAN, after reviewing the authorities and considering the case from the standpoint of principle, stated the rule which should have been applied in the trial as follows: "The township authorities were bound to foresee and reasonably provide against a common danger to ordinary travel on that highway; it is well known that one of such dangers arises from the habit of fright in the horse, and it is just as well known that when affrighted no one can foretell his conduct; the presence of guard rails would have been a protection from the danger of going over the bridge, no matter what the movement of the horse; therefore, the habit of the horse being known, they ought to have put up the guard rails, and their neglect of duty in this particular was the proximate cause of the injury. Or to express it in another form: The fright of the horse was ordinary, and to be expected; that his conduct when in fright would be unreasoning, insane and unlooked for, was also to be expected; if it were otherwise, it would have been extraordinary, because contrary to common observation; the township authorities should have guarded against that which was to be expected, and it will not excuse the negligence of the supervisors or make that negligence the remote cause, to assert, they could not foresee the particular freak of conduct in a terrified horse." This ruling was followed in the case of Bitting v. Maxatawny Township, 177 Pa. 213; and in Boone v. Township of East Norwegian, 192 Pa.

206, it was said, that it must be considered as the settled law in all cases in which it is applicable to the facts. It was held not applicable to the case of a balking horse, in Cage v. Franklin Township, 11 Pa. Superior Ct. 533, upon the ground that tendency to take fright is common, whilst the disposition to balk and back without cause is exceptional. "Whether it proceeds from inherent badness of nature from bad breaking when a colt, or from bad treatment afterwards, it is a vice. It is not a common trait nor a common habit of the ordinary horse, and we do not understand it to be the law that the country roads must be made safe against every possible freak of a horse, and that the township is liable for the resultant injury, no matter at what distance from the defective place it takes possession of him." The case of Davis v. Snyder Township, 196 Pa. 273, is closely analogous in its facts to the present case and was decided upon the principle above stated in Yoders v. Amwell Township. It is true, as we said in Russell v. Westmoreland County, 26 Pa. Superior Ct. 425, there are cases in which it has been held to have been the duty of the court to declare as matter of law that the negligent omission to provide a guard rail at a point like that in question, although concurring with the fright of the horse, was not the proximate cause of the injury. Many of these cases are collected in Card v. Columbia Township, 191 Pa. 254. For the most part they were decided upon the ground that it appeared in the presentation of the plaintiff's own case that the accident was produced by an intervening or independent or unrelated cause, the happening of which the defendant could not reasonably be expected to foresee and provide against, as for example the breaking of traces, Willis v. Armstrong County, 183 Pa. 184; Card v. Columbia Township, 191 Pa. 254; the giving way of holdback straps, Habecker v. Lancaster Township, 9 Pa. Superior Ct. 553; the choking of the horse by a too small collar, Chartiers Township v. Phillips, 122 Pa. 601; or his fright from an extraordinary cause at a point distant from the place of the accident, Schaeffer v. Jackson Township, 150 Pa. 145. None of these cases, however, goes to the extent of deciding as an abstract proposition of law, to be applied without regard to

the circumstances, that the action of an ordinarily safe and tractable horse suddenly becoming frightened at the very place where the highway is negligently left in a dangerous condition and backing over the unguarded precipice, is always to be regarded as one of those extraordinary occurrences which the public authorities cannot reasonably be expected to foresee and provide against. On the contrary, in Herr v. City of Lebanon, 149 Pa. 222, which belongs to this class of cases and fairly illustrates the practical distinction between them and the case at bar, Mr. Justice WILLIAMS, speaking for the court, said: "If, therefore, in the ordinary use of the street one had been crowded over the bank by the volume of travel, by the sudden shying of his horse, or by reason of an accumulation of ice upon the roadbed, the absence of the barrier might justify a recovery if the plaintiff was not guilty of contributory negligence, and so in part the author of his own misfortune. Such accidents may be said to be a probable result of the neglect complained of. If so, the city was bound to anticipate and provide against them, and its failure to do so was negligence." The duty of a municipality, whether township, borough, city or county, having control of the highways, is to keep them reasonably safe for ordinary travel by the ordinary horse. It is under no obligation to provide for everything that may happen upon them, but only for such things as ordinarily exist or such as may be reasonably expected to occur. Applying these principles, it does not necessarily follow that if the object at which this horse took fright was not within the limits of the highway the plaintiff could not recover. As was said in Davis v. Snyder Township, that may be treated as a mere incident of the cause, the same as the blowing of a leaf or the casting of a shadow upon the road, at either of which a horse might have taken fright. The court properly left to the jury the question, whether the presence of the tin where and as it was, was or was not in character an unusual incident to travel upon the public highway. The learned trial judge in his charge clearly pointed out the resemblance of the case to the case of Davis v. Snyder Township, and to have instructed the jury in accordance with the defendant's contention would

have been in direct conflict with the principle upon which that case was decided. We have carefully considered all of the cases cited by appellant's counsel and are of opinion that the foregoing conclusion is not in conflict with the points actually decided in them.

The third assignment of error is to the refusal of the court to grant a new trial upon after-discovered evidence. The evidence taken upon the rule was heard by both judges of the court, and in their opinion refusing the motion they said: "Both members of the court are decidedly of the opinion that a new trial should not be granted on the ground of after-discovered evidence. Assuming it to be honest testimony we are persuaded that due diligence upon the part of the defendants would have discovered it before the trial, and we are also of the opinion that this evidence would not legitimately require or even probably procure a different verdict." This conclusion was based on the application of familiar and well-understood rules governing the granting of new trials upon the ground of after-discovered evidence, and after a careful reading of the evidence submitted upon the motion we are all of opinion that the discretion vested in the trial court in such matters was not abused, but was wisely exercised.

The judgment is affirmed.