## Fischer v. City of Philadelphia et al.

*Freedman, Landy & Lorry,* for plaintiff.

*Frank F. Truscott,* city solicitor for City of Philadelphia.

*Samuel S. Herman,* for Philadelphia Transportation Company.

BOK, P. J., April 14, 1952.—On November 15, 1949, plaintiff was on a subway train of the transportation company after donating some of his blood at a hospital.

The train was crowded and he had to stand. During the journey he felt weak and nauseated, and deciding that he should sit down, left the train at the North Philadelphia subway station in order to rest on one of the benches there. While walking towards the bench, a brown haze came over his vision, he lost consciousness, and awoke lying face down at the bottom of the unused train pit on the opposite side of the platform.

This pit was somewhere between five and eight feet deep. No tracks had been laid in it, and it had apparently been built to meet the needs of future traffic expansion. There was no fence or guardrail. No one saw the accident, but a woman testified: "I started to get off the train and I heard a crash and I saw him in an awkward position face down. I assisted him out and sent him on home." She said that he was in the pit for 15 minutes but did not say that they had both alighted from the same train. No evidence was given of how wide the station platform was: plaintiff said that he saw a bench about 20 feet away when he left the train, but did not add whether it was straight ahead of him or at an angle.

The trial judge, by reason of the lease between the two defendants, directed a verdict for the city, leaving the transportation company as the sole defendant.

The jury found for him in the sum of $1,500. Defendant has filed motions for judgment n. o. v. and for a new trial, but does not press the latter.

The former must be granted.

Plaintiff has cited several cases that are useful on the point that it is negligence to leave unguarded or unfenced culverts, bridges, roadways, and the like. These are: Lower Macungie Township v. Merkhoffer, 71 Pa. 276 (1872) ; Borough of Pittston v. Hart, 89 Pa.

389 (1879) ; Corbalis v. Township of Newberry, 132 Pa. 9 (1890) ; Stokes v. Township of Ralpho, 187 Pa. 333 (1898) ; Kammerdiener v. Rayburn Township, 233 Pa. 328 (1912) ; Lindberg v. Mifflin Township, 247 Pa. 464 (1915) ; Clark v. Allegheny County, 260 Pa. 199 (1918) ; Millikin v. Richhill Township, 67 Pa. Superior Ct. 326 (1917).

His nearest case on the facts is Wolfe v. Smith et al., 252 Pa. 562 (1916). Plaintiff, while waiting for a train, decided to walk up and down the platform: then she decided to leave the platform entirely and walk up the track. The end that she chose to step off was actually four feet high, but she thought it was only a foot or so to the ground, and fell. A verdict for her was affirmed.

In every one of these cases there is a clear story of how the various plaintiffs fell into the ditches or down the declivities that were involved. Down they went, step by step, and there was no doubt of how they got there: nor was there any doubt that the lack of a fence or rail was the proximate cause.

In the instant case there is no such linking evidence. Plaintiff started for the bench, lost consciousness, and awakened in the pit. His broken nose and the fact that he was lying face down might entitle him to the inference that he was injured by the fall, but unless the doctrine of verdict inferences allows him this one, it is not at all certain that he was hurt in the fall: he might have fallen on his face on the platform and rolled, further uninjured, into the pit.

How he got there at all is a mystery. He may have been walking about the platform in a daze and been pushed off, either deliberately or accidentally by a passer-by. He may have fallen uninjured into the pit, arisen, and fallen again, injuring himself the second time while still on the concrete floor of the pit. He

may have been beaten during an attempt to rob him and laid in the pit by his assailant.

Had there been a guardrail, it might have caught him if it had been of one kind, or have let him roll under it, if of another kind. It is not even impossible that a movable barricade was there and had been removed by an unauthorized person 10 minutes before the accident.

No case precisely like it appears in the books, but the general principles are clear. The mere happening of an accident is no show of negligence, and the burden of proving it remains on plaintiff. Circumstantial evidence must be strong enough to leave negligence as the only reasonable inference. Defendant is not an insurer: Anderson v. Reading Co., 306 Pa. 246 (1932) ; Skrutski v. Cochran et al., 341 Pa. 289 (1941) ; Houston v. Republican Athletic Association et al., 343 Pa. 218 (1941) ; Rhine v. Philadelphia, 24 Pa. Superior Ct. 564 (1904).

Possibly the nearest case in point of fact is that of Anschel v. Pennsylvania Railroad Company, 346 Pa. 123 (1943), in which plaintiff fell down a closed elevator shaft in Broad Street Station. Finding and judgment for defendant were affirmed, the court saying:

"Boyle characterized this accident as a 'mystery' and on the record this characterization must be accepted. That it *is* a mystery is the fatal weakness in plaintiff's case."

We cannot heed plaintiff's earnest request to grant him a new trial instead of entering judgment, in order to let him introduce photographs of other station platforms with fences and guard rails. The trial judge rejected these at the trial, and very properly. Each platform is capable of standing on its own feet, and if there be negligence in leaving an open pit at one, it is no greater merely because another has been fenced in. In

any event, this has nothing whatever to do with how plaintiff got into the pit. The lack of a fence has not been shown to have been the proximate cause of his presence there.

The motion for judgment. n. o. v. is granted, and judgment is entered in favor of defendant.