## Commonwealth v. Letterman.

A. C. Dale, for rule; John G. Love, District Attorney, for Commonwealth.

FLEMING, P. J., Aug. 8, 1929.—The defendant seeks a new trial, having been convicted of the crime of fornication and bastardy. The defense offered at the trial was an *alibi*, the defendant contending that on Jan. 7 and Jan. 8, 1928, when the prosecutrix alleged that he was with her in a hunting camp in the Seven Mountains, this county, he was actually at his home in Milesburg. The defense was somewhat unusual, in that it was sought to be proven, without any show of hesitation, that it was the defendant's brother, and not he, who was present at the time the prosecutrix became pregnant and who was responsible for her condition. The brother was present in court, testified in behalf of the plaintiff, making admissions which, had they been believed by the jury, would have definitely convicted him of the crime, and sitting at the counsel table throughout a major portion of the trial. The family resemblance

appearing between the two brothers was used in the cross-examination of the prosecutrix in an endeavor to weaken her testimony, but she was unshaken in that it was the defendant, and not his brother, who had had sexual intercourse with her and who is the father of her child.

It was testified at the trial that other parties present at the hunting camp on the date when the alleged act of intercourse was had, by means of which the prosecutrix became pregnant with child, were Dorothy Tressler, now under commitment by our Juvenile Court of Quarter Sessions to Sleighton Farm, and one "Red" Sheckler, now serving a sentence in the county prison for enticement of a female minor child. Sheckler quite brazenly related in open court the things which took place in the hunting camp and testified that it was defendant's brother and not the defendant who was in the company of the prosecutrix on the night in question. The Tressler girl did not appear at the trial. The defendant had, however, previous to the trial, obtained an order of court permitting the Tressler girl to be brought from Sleighton Farm, provided he, the defendant, would advance the sum necessary to keep the county free from expense incident to such trip. · The funds not being advanced by the defendant and the Commonwealth then making no request that she be produced at the trial, the Tressler girl did not appear.

Following the conviction of the defendant and when the present motion was first called for argument, counsel for defendant argued that it was a case of mistaken identity and that the Tressler girl would testify unequivocally that it was defendant's brother and not the defendant who was in the company of the prosecutrix at the hunting camp on the date specified. We, at that time, said that we would cause the Tressler girl to be brought here and that, if she testified in the manner indicated, we would not only allow a new trial but we would recommend the entry of a *nol. pros.* in this action against this defendant.

When the Tressler girl was produced before us, however, she was confronted with both the defendant and his brother and asked by us to designate which of the two had been in company with the prosecutrix, Sheckler and herself, on Jan. 7 and Jan. 8, 1928, at the hunting camp. Quite frankly, and without hesitation, she designated the defendant in answer thereto, and denied that defendant's brother had been there. Then, for the first time, the allegation of after-discovered evidence was made and, by the grace of the Commonwealth, which waived all requirements as to time, additional testimony was taken before a notary, and which, by agreement, has been made a part of the record, and is now before us for consideration.

The additional witnesses offered are the two sisters of the defendant, the father of the defendant and Dr. J. C. Rogers, the physician in attendance upon the prosecutrix at the birth of her child. The testimony of the two sisters and the father is to the effect that defendant was at his home on the dates specified and could not, therefore, be at the hunting camp where the act of intercourse is alleged to have taken place. The testimony of Dr. Rogers is concerned with the admission of the prosecutrix to the hospital and the consequent conversation as to who should pay the bill and to the conduct of the defendant after trial and conviction, when the doctor's bill was presented to him. The doctor also advances his opinion as to the innocence of the defendant, formed from his observations and defendant's denial when asked to pay his bill. The doctor's testimony is practically all hearsay evidence and would be inadmissible were a new trial to be granted.

In Com. *v.* Williams, 2 Ashm. (Pa.) 69-76, following Moore *v.* Philadelphia Bank, 5 S. & R. 41, the court says, in speaking of motions for a new trial:

"Motions of this kind . . . are to be received with caution, because there are few cases tried in which something new may not be hunted, and because it tends very much to perjury to admit new evidences after the party who has lost the verdict has had an opportunity of discovering his adversary's strength and his own weakness."

The defendant, at the trial, elected to offer an *alibi* as his defense. Where a defendant sets up an *alibi* as a defense, the burden of proving his *alibi* to the satisfaction of the jury is upon him. This *alibi* need not be proven beyond a reasonable doubt. It is sufficient if the testimony in support of such a defense raises a reasonable doubt in the mind of the jury: Clark *v.* Com., 123 Pa. 555. This defendant produced witnesses at the trial in an attempt to show that he was not present at the hunting camp on the dates named. The purpose of this sort of a defense is not to convince the jury of his distance from the scene of the crime, or of his non-participation in it, but to prevent the jury's being convinced by the Commonwealth that he was present at the scene of the crime and participated in it. It is but an element in any defendant's purpose of raising the reasonable doubt sufficient to acquit. In this purpose the defendant did not succeed, as the jury found him guilty.

Was the testimony of the sisters and the father actually after-discovered and such as could not have been previously discovered by diligent investigation? Would the proposed testimony be sufficient to change the verdict, or, if heard by the jury, have been of such weight as to cause the court to set aside a verdict of guilty if the jury so found? Unless the court is satisfied that affirmative answers must be given to all these questions, the new trial must be refused: Com. *v.* Albert, 16 Dist. R. 759; Goldstein *v.* East Fallowfield Township, 43 Pa. Superior Ct. 158; Com. *v.* Austin, 8 Berks Co. L. J. 78.

Of the fact that such proposed evidence is after-discovered and could not have been produced at the trial, the court is not convinced. According to the testimony of both of defendant's sisters, they were in the court-room at the time of the trial. The father was at his home in Milesburg, a short distance from the county-seat, and defendant was residing with him immediately before and at the time of the trial. With an *alibi* contemplated, there is no reason why this testimony could not have been produced. Further, the testimony sought to be offered comes from defendant's own family and would be received with caution and carry less weight than that of the supposedly disinterested witnesses who did actually testify at the trial. There is no reason to suppose that it would change the verdict. It is definitely certain that it is not of sufficient weight to cause the court, were it to be heard by a jury and a verdict of guilty found, to set aside such verdict. These conclusions as to the weight of the proposed evidence are fully borne out by the fact that the defendant, in attempting an *alibi*, would have had the jury infer that it was his brother, and not he, who is guilty of the crime charged. The witnesses now offered seek to have it appear that, while defendant was at home on the dates with which we are concerned, his brother was absent, thus again pointing their finger of guilt to the brother, who, although resident with the defendant and his father, and who, although in close contact with his sisters, has not stepped forward to relieve this unfortunate prosecutrix or her child in any way.

The testimony sought to be adduced as after-discovered evidence is but cumulative, and corroborative merely of other testimony actually offered: Com. *v.* Flanagan, 7 W. & S. 415; Mellinger *v.* Pennsylvania R. R. Co., 229 Pa. 122; Com. *v.* Glotstein, 26 Lanc. Law Rev. 165; Com. *v.* Yocum, 12 Dauphin Co. Reps. 292.

We have already stated that the testimony of Dr. Rogers appears to be purely hearsay and would be inadmissible were a new trial to be had. The conversation which the doctor had with the brother of the prosecutrix has no materiality, and the doctor's observations of the defendant and the defendant's statements to the doctor after conviction likewise have no evidential value.

We are fully convinced, beyond a shadow of a doubt, that defendant has had a fair trial and has been accorded every opportunity since his trial to convince the court that it was his brother and not he who accompanied the prosecutrix to the hunting camp and there had intercourse with her, resulting in the birth of a child. He relied strongly upon the anticipated testimony of Dorothy Tressler, whose testimony was plain and convincing against him. The so-called after-discovered evidence has not measured up in any way to the standards required for the granting of a new trial. His guilt has been more than well established, and he should pay his debt to society.

And now, Aug. 8, 1929, motion for new trial is discharged and defendant is directed to appear in court on Monday, Aug. 19, 1929, for sentence.

From S. D. Gettig, Bellefonte, Pa.